**LOVING et al. v. CLEM et al.**

No. 10802.

Court of Civil Appeals of Texas. Dallas.
June 28, 1930.

Rehearing Denied July 26, 1930.

Thompson, Knight, Baker & Harris and Jno. C. Read, all of Dallas, for appellants.

E. G. Hunter and Hamilton & Hamilton, all of Dallas, for appellees.

JONES, C. J.

From an order of a district court of Dallas county refusing a temporary writ of injunction to restrain appellees, R. H. Clem, W. L. Wiggins, and W. L. Randolph, from erecting two brick veneer apartment houses on lot 20 and 65 feet off of the entire northeast side of lot 19 in block 5 of Munger Place Heights addition to the city of Dallas, appellants J. G. Loving and Herbert Stellmacher, who instituted the suit, and Mrs. R. W. Eaton, who intervened as a plaintiff, have duly perfected an appeal to this court. The following is a sufficient statement of the facts for an understanding of the issues involved:

Munger Place Heights is a residential addition to the city of Dallas, platted into blocks, streets, and alleys, and duly dedicated by deed to such purpose. Gaston avenue is a principal street through such addition, and will be considered as running East and West, though its real direction is at an almost 45-degree angle. Skillman street extends north and south, and is the western boundary of this addition, the eastern boundary is Linden avenue, and Junius street is the southern boundary. Ridgeway, Russell, Lipscomb, Nesbitt, and Paulus streets extend north and south through a part of this addition, between Skillman street and Linden avenue, but terminate at the south line of Gaston avenue. Block 3 of the addition is on the north side of Gaston avenue, and is composed of the lots between Skillman street and Linden avenue, fronting on the north side of Gaston avenue. Block 4 is on the south side of Gaston avenue, between Lipscomb and Nesbitt streets, with a frontage of 300 feet on Gaston avenue, and extends back to Junius street; there being an alley running east and west in the rear of those lots fronting on Gaston Avenue. South of the alley the lots in this block front either east on Nesbitt or West on Lipscomb. Block 5 is between Paulus and Nesbitt streets, and has a frontage of 300 feet on Gaston avenue and 300 feet on Junius; the lots that front on Gaston avenue extend back to the alley and the lots south of the alley front, respectively, west on Nesbitt and east on Paulus. Block 6 lies to the east of Paulus with lots fronting on Gaston avenue and south of the alley on Paulus street. The lots owned by the parties to this suit are located in block 5 of said addition, except the lot of Mrs. R. W. Eaton, which is located in block 3, its front line being the north side of Gaston avenue and is directly opposite appellees' lots in block 5. Stellmacher's lot fronts on Nesbitt street, and is immediately in the rear of lots 17 and 18 of block 5. The north boundary line of lots 17, 18, 19, and 20 in block 5 is the south line of Gaston avenue. Loving's lot fronts on Paulus street, and is immediately in the rear of lots 19 and 20 in block 5. The land of appellees, on which the apartment houses are attempted to be erected, consists of lot 20 and the adjoining 65 feet off of lot 19 in block 5. These lots front on Gaston avenue, extend back to said alley, and are immediately north of the Loving lot; lot 20 being bounded on the east by Paulus street. Appellants and appellees hold their respective properties by deeds of conveyance from the Dallas Trust & Savings Bank, trustee, which is the common grantor of all of the properties in the addition of Munger Place Heights.

Certain restrictive covenants were placed in all deeds from the common grantor to purchasers of lots in this addition. These restrictions vary according to the location of the lots, in respect to the minimum cost of the houses to be built, in respect to the location of outhouses and other structures allowed to be constructed on a lot, and perhaps in some other minor respects, but every deed restricts the main structure to that of a family residence, to be used by a single family. These restrictive covenants recite that they run with the land, and they manifest a clear intention of the grantor to make the addition of Munger Place Heights a restricted residential district. In each deed there is placed a clause, as a part of the covenants, giving to the purchasers of lots the right to amend any of the restrictions under specified conditions.

In the deeds to appellees, and in the deeds to all other owners of lots in block 5, which front on the south side of Gaston avenue, the clause giving the right to amend reads: "It is fully understood and agreed that at any time any of the above conditions, so far as they affect the property on Gaston Avenue between Paulus and Nesbitt streets, may be amended by a vote of three-fourths of the owners on said street voting according to front foot holdings, each front foot counting as one vote."

As stated, the restrictive covenants in the deeds to appellees deny to them the right to construct the contemplated buildings, unless they secure such right by way of amendment to these covenants, adopted in conform-

ity to the provisions of the above-quoted clause of their deeds.

Before appellees undertook to construct the apartment buildings in question, they secured an amendment to these restrictive covenants, which authorizes them to erect such buildings. This amendment was submitted only to the owners of lots in said block 5, fronting on Gaston avenue and located between Nesbitt and Paulus streets, and adopted by a vote of three-fourths of the front footage of the owners of such lots. The owners of lots in block 3 on the north side of Gaston avenue were not consulted as to the adoption of this amendment; nor were the owners of lots fronting on Gaston avenue in blocks 4 and 6 consulted in reference thereto. The owners of lots in block 5, fronting on either Nesbitt or Paulus streets, were not consulted.

Appellants contend that the amendment in question is void, because not adopted in the manner provided for in said clause. This contention is based on the theory that the amending clause in appellees' deeds requires (1) a vote by all of the owners of lots fronting on either side of Gaston avenue in Munger Place Heights addition, and is not restricted to the owners of the lots on the south side of Gaston avenue, located between Nesbitt and Paulus streets; (2) or that such clause requires the amendment to be voted, not only by the owners of lots on the south side of Gaston avenue, between Nesbitt and Paulus streets, but also by the owners of those lots fronting on the north side of Gaston avenue and immediately opposite the lots on the south side; (3) that, independent of the question of the amendment, the construction of these apartment houses is forbidden by the late zoning ordinance.

The right to amend the restrictive covenants is a vested contract right in appellees and cannot be impaired by the subsequent enactment of zoning ordinances. The issues of this case therefore depend entirely upon the construction to be given the amending clause in appellees' deeds. Under the broad construction given such a clause in deeds containing restrictive covenants, if the provisions of the clause are conformed to in voting a proposed amendment, the portion of this addition affected by such amendment may be entirely changed in its status as a restricted residential district. Couch v. Southern Methodist University (Tex. Com. App.) 10 S.W.(2d) 973. Under this authority the effect of the amendment, in respect to whether it changes the status of the property in this addition from a restricted to a nonrestricted district, cannot be considered. It must be borne in mind that an amending clause is placed in each deed to lots in this addition. It necessarily follows that, while the common grantor initiated a general plan or scheme of development, which manifested an inten-

tion to create a highly restricted residential district, still the power to change the status of property in this respect in this addition is given in some form to all purchasers of lots in the addition. The purchaser of a lot in this addition, therefore, has no guaranty that his section of the addition will remain a restricted residential district.

The amending clause under consideration declares that, "at any time any of the above conditions, so far as they affect the property on Gaston Avenue between Paulus and Nesbitt streets, may be amended by a vote," etc. The right to amend the restrictions given in this clause rests only in the owners of those lots between Paulus and Nesbitt streets, fronting on Gaston avenue. Owners of lots located elsewhere in this addition are given no right by this clause to amend the restrictions. This clause deals only with those who own lots fronting on Gaston avenue and lying between Paulus and Nesbitt streets. It gives no right to those owners of lots on the north side of Gaston avenue, though their lots be situated directly opposite from the lots which are given such right, for Nesbitt and Paulus streets do not cross Gaston avenue, and hence their lots are not between such streets. This clause gives no right to amend to those owners of lots fronting on the south side of Gaston avenue and located between Nesbitt and Lipscomb streets.

Is the right to vote on an amendment to the restrictions in appellees' deeds, and in the other deeds to lots fronting on Gaston avenue and lying between Paulus and Nesbitt streets, given to those who have no right to amend the restrictions in their deeds under the terms of this clause? We do not think so. The clause declares the right to vote is given to the "owners of lots on said street," and it is contended that this means both sides of the entire street in this addition. We think the term "said street" must be construed to mean that section of Gaston avenue that lies between Paulus and Nesbitt streets, for only the property in this section is made the subject of this amending clause. We think such intention of the common grantor is made certain when we refer to the other deeds introduced in evidence. They disclose that the lot owners in this addition are dealt with by sections or units in the respect of giving the right to amend the restrictive covenants. Such intention appears from the amending clauses placed in the deeds to purchasers of lots in the different sections or units created by said clauses for such purpose. While the owners of lots in each section are given the right to amend, by an amending clause in their deeds, such clause differs in respect to the lots to be affected by an amendment. Mrs. Eaton's lot is located in a unit which includes the twenty-one lots lying on the north side of Gaston avenue and between Skillman street and Linden avenue. Appellant Loving's lot lies in another unit and con-

sists of those lots located in block 5 that front on Paulus street; appellant Stellmacher's lot is in a unit that consists of those lots in block 5 that front on Nesbitt street.

We conclude that the only reasonable construction to be placed on the amending clause in the various deeds to lots in this addition is that the common grantor created separate units and vested the owners of lots in each unit with power to amend the restrictive clauses without the aid or interference of owners of lots located in other units. The owners of lots in block 3, which is composed of twenty-one lots on the north side of Gaston avenue and lying between Skillman street and Linden avenue, are given the power of amendment; likewise the owners of lots in block 5 fronting on Gaston avenue are given the exclusive power to amend the restrictive covenants; and the same must be said of the owners of lots in the other units created for this purpose by the grantor.

We therefore conclude that appellees, having secured the necessary vote to amend the restrictions, required by their deeds, and, having the right, under the terms of the amendment, to construct the buildings contemplated, the trial court did not err in refusing to grant the injunction, and the judgment is affirmed.

Affirmed.

In view of the earnestness with which able counsel contends that we are in error in our interpretation of the amending clause in each of the deeds to owners of property in Munger Place Heights addition, and in view of the dissenting opinion of Mr. Justice VAUGHAN, we deem it necessary to review the opinion in the case of Couch v. Southern Methodist University (Tex. Com. App.) 10 S.W.(2d) 973, and also the opinion of this court in said case, reported in 290 S. W. 256. Both opinions were written in respect to the interpretation of an amending clause of similar import to the clause in the instant case, and we believe the decision of the Supreme Court in that case, through the Commission of Appeals, is decisive of the question here involved. In the reported case, Southern Methodist University owned land adjoining the University campus and dedicated it as University Park addition to the city of Dallas. Its scheme for improvement was substantially the same as that in the instant case. It was clearly the intention of the owner to make the addition a highly restrictive residential addition, and restrictive covenants, similar to covenants in the instant case, manifesting such intention, were placed in each deed to a purchaser of a lot in the addition. In each deed there was an amending clause in the following language:

"Provided, however, that at any time any of the above conditions so far as they affect the property on Hillcrest avenue between Roberts avenue and University boulevard, University boulevard between Hillcrest avenue and Dickens street; University boulevard between Dickens and Thackeray street; University boulevard between Thackeray street and Golf Drive; Haynie avenue between Dickens street and Thackeray street, may be amended by vote of three fourths of the owners of said streets voting according to the front foot holdings, each front foot counting as one vote."

Couch was the owner of a lot on Hillcrest avenue between Roberts avenue and University boulevard. He desired to erect business houses on such lot and secured an amendment to the restrictive covenants permitting such construction, by a vote of three-fourths of the owners of lots on the west side of Hillcrest avenue, between Roberts avenue and University boulevard, according to front foot holdings. The east side of Hillcrest avenue was not a part of the addition. The other owners of lots on streets designated in the amending clause were not consulted in reference to this amendment. Couch was enjoined from proceeding under the amendment thus voted, by a suit of the Southern Methodist University and other owners of lots on the streets named in the amending clause. In an appeal to this court, Couch contended that the amendment to the restrictive covenants in his deed was adopted in conformity to the procedure prescribed by the amending clause. The appellees in the case contended, (a) that the dominant purpose of the grantor in creating a restrictive residential district could not be annulled or destroyed by an amendment to the restrictive covenants which had such an effect; (b) that under the terms of the amending clause it required a vote of three-fourths of the owners of property on all of the streets designated in the amending clause, and that the attempted amendment was void because such procedure was not followed.

The court in its opinion affirmed the judgment of the lower court on the first ground above mentioned, but assumed that appellant Couch was correct in his contention as to what property owners were allowed to vote on an amendment. A writ of error was granted, and the opinion of this court was reversed on a holding that, under the guise of an amendment, the dominant purpose of the restrictive covenants could be destroyed. The Supreme Court specifically held that the contention of the appellees in that case, in respect to the property owners who were authorized to vote on such an amendment, was unsound. The opinion quoted the amending clause in the deeds and then disposed of the contention by declaring that "the proposed amendment was adopted in the manner there provided for." This quoted language overruled the very contention in that case which is made by appellant in this case. The motion for rehearing is overruled.

Overruled.

VAUGHAN, J. (dissenting).

Not being able to agree to the construction given by the majority opinion to the language contained in the deeds to appellees, viz. "It is fully understood and agreed that at any time any of the above conditions, so far as they affect the property on Gaston Avenue between Paulus and Nesbitt streets, may be amended by a vote of three-fourths of the owners on said street voting according to the front foot holdings, each front foot counting as one vote," and the disposition of the appeal being made thereon, I am impelled from a sense of duty to express my views in reference thereto. I wish to supplement the statement of facts contained in the majority opinion by adding thereto copy of the plat of Munger Place Heights, contained in the statement of facts, viz.:

opment, the benefits to accrue to the vendor and vendee of each lot and to the vendees of the lots as a class of Munger Place Heights, had reference to and only meant that, in order to remove the restrictions contained in the deeds to appellees, it was only necessary that three-fourths of the owners of lots fronting on the south side of Gaston avenue between Paulus and Nesbitt streets should vote in favor of the removal of such restrictions, and that said language so considered in connection with said scheme, etc., did not express the meaning that such restrictions could only be amended by a vote of three-fourths of the owners on Gaston avenue from Skillman street to Linden avenue voting according to front foot holdings.

In order to properly ascertain the real intention evidenced by the provision of the

# MUNGER PLACE HEIGHTS
## DALLAS TEXAS

The majority opinion holds that the language, "may be amended by a vote of three-fourths of the owners on said street voting according to front foot holdings, each front foot counting one vote," considered in the light of the general plan or scheme of development, the benefits intended to accrue to the purchasers of the lots, individually and collectively. In this connection, I deeds authorizing such amendment, same should be considered in the light of the surrounding circumstances, the objects to be accomplished, and the benefits intended to accrue to the purchasers of the lots, individually and collectively. In this connection, I

wish to quote from the opinion of the Supreme Court of Appeals of Virginia, in the case of Elterich v. Leicht Real Estate Co., 130 Va. 224, 107 S. E. 735, 739, 18 A. L. R. 441, the following:

"As said in Kitching v. Brown, supra, 180 N. Y. at page 419, 73 N. E. at page 242, 70 L. R. A. at page 745:

"'When a word or phrase used in a covenant has more than one meaning, judicial knowledge of existing circumstances and conditions is indispensable to a correct exposition of the law upon the subject, and to that end parol evidence is admissible' (citing cases).

"'One of the familiar rules applicable to the interpretation of ambiguous covenants and agreements is to ascertain, as nearly as may be, the situation of the parties, their surroundings and circumstances, the occasion and apparent object of their stipulations, and, from all these sources, to gather the meaning and intent of their language' (citing numerous cases).

"As said in the note in 45 L. R. A. (N. S.) supra, at page 727: 'Regard must be had to the object which the covenant was designated to accomplish, and the language used is to be read in an ordinary or popular, and not in a legal and technical sense' (citing numerous cases).

"As said of covenants such as that in question before us, 45 L. R. A. (N. S.) 728: 'The language used must be given its obvious meaning, and be construed in accordance with the intention of the parties, assuming that the restriction was put into the deed not simply for the benefit of the grantor, but for the benefit of every owner of property and of every resident on the street' (citing a Michigan case, Harris v. Roraback, 137 Mich. 292, 109 Am. St. Rep. 681, 100 N. W. 391).

"As said (45 L. R. A. [N. S.] 728): 'Particular words in such a covenant are to be given the meaning that was commonly given to them at the time the instrument containing the covenant was executed' (citing a New York case, White v. Collins Bldg. & Constr. Co., 82 App. Div. 1, 81 N. Y. S. 434).

"And as said (45 L. R. A. [N. S.] 727): 'The primary rule of interpretation of such covenants is to gather the intention of the parties from their words by reading, not simply a single clause of the agreement, but the entire context, and where the meaning is (otherwise) doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met' (citing a number of cases), 'or in connection with the surrounding circumstances at the time the deed was executed' (citing cases)."

The writer thinks it must be conceded that a part of the general scheme or plan for making the addition a highly restricted residential district, and maintained as such, included the division of the addition into districts in which the restrictions contained in the deeds could be amended for the benefit of the owners of, and applicable only to, the lots in a particular locality, and that, as all of the owners of lots fronting on Gaston avenue had an interest in the preservation of said scheme or plan, under which said lots were, respectively, sold and purchased by them, had the right conferred upon them to vote on a proposed amendment to the restrictions in any one of said particular localities fronting on Gaston avenue. This construction of the language authorizing restrictions to be amended the writer believes to be in accord with such general scheme or plan, and that the holding of the majority opinion is in conflict therewith, as it confers upon a small minority of the owners of lots fronting on Gaston avenue the right to amend, or practically to destroy, such general scheme or plan, although a majority of the owners on Gaston avenue should be opposed to the making of the proposed amendment to the restrictions that apply alike to all of the property owners on Gaston avenue; the benefits thereof being just as valuable to the owners denied the right to vote on such proposed amendment as same could be to the small minority voting for and adopting the amendment. What of the instant situation? We have the owner of property subdividing the same and placing it upon the market as a highly restricted residential addition to the city of Dallas, selling and conveying lots to the respective purchasers thereof, containing substantially the same identical restrictions necessary to accomplish the proposed result, and inserted in the conveyances the provision that such restrictions shall remain in force for a period of approximately fifty years, and to secure the observance of such restrictions the vendor retained a right of reversion of title in himself and his successors, in the event such restrictions should be violated. Therefore each deed forms an integral part of the means of preserving the scheme or plan under which said addition was created and lots sold, and that there should be uniformity with reference to any changes that might be desired to be made in such restrictions the grantor inserted a provision for amending said restrictions in designated localities, viz. by a vote of three-fourths of the property owners on Gaston avenue voting on a basis of front foot holdings, each front foot counting one vote.

The language of the authority to amend the restrictions will have to be shorn of the commonly accepted meaning accorded to such verbiage to hold that it was only necessary to amend the restrictions contained in appellees' deeds that three-fourths of the property owners on Gaston avenue between Paulus and Nesbitt streets should have voted in favor of the amendment authorizing the con-

struction of the apartment buildings as contended for by appellees.

Gaston avenue extends through the addition from Skillman to Linden avenue, and certainly under the scheme or plan that said addition was created and intended to be maintained, every owner of property in said addition located on both sides of Gaston avenue in certain respects is as vitally interested in the character of improvements to be placed on and in the use to be made of the lots fronting on Gaston avenue in one location as much so as in another. Therefore it is but in keeping with that feature of the general scheme or plan applicable to said addition in reference to the individual and collective rights of the owners of lots therein as to the improvements to be placed on such lots and the use to be made of same to hold that the language of the provision relied on by appellees is subject to the construction that, in order to amend the restrictions as to any property on Gaston avenue, regardless of where located, such amendment must be adopted by the vote of three-fourths of all owners on both sides of Gaston avenue in said addition.

This the writer believes to be the reasonable and natural construction of the language used and in harmony with the general plan or scheme for the development of said district. This only accords to the language used its natural effect, and is in conformity, not only with said general plan or scheme, but in accord with the rights of all of the owners of lots located in Gaston avenue, and harmonizes the rights of amendment as contained in the several deeds, respectively, conveying the lots in said addition fronting on Gaston avenue. The words "said street," as used in said provisions, necessarily refer back to Gaston avenue, and, there being no limitation in any conveyance as to what part of Gaston avenue is referred to, the holding that same only referred to the owners of property on that street between Nesbitt and Paulus streets can but have drastic effect upon the use and value of the lots located on Gaston avenue, as such construction will result in allowing the holders of 275 feet on the front side of Gaston avenue to destroy and render useless the general scheme or plan under which said addition was created.

In the case of Tabern v. Gates, 231 Mich. 581, 204 N. W. 698, it is held, "In construing a building restriction, court is not so much concerned with rules of syntax or strict letter of words used, as it is in arriving at intention of restrictor, if that can be gathered from entire language of instrument"; in the case of Donnelly v. Spitza, 246 Mich. 284, 224 N. W. 396, it is held, "Covenants are to be construed with reference to present and prospective use of property, as well as specific language used and as whole"; in the case of Seeley v. Phi Sigma Delta House Cor-

poration, 245 Mich. 252, 222 N. W. 180, "Language employed in stating restrictions is to be taken in popular sense"; in the case of Vaughn v. Lyon, 122 Okl. 179, 252 P. 1088, it is held, "Effect should be given intention of parties as shown by language in covenant restricting realty in connection with circumstances and object in view"; and in the case of Seibert v. Ware (Sup.) 158 N. Y. S. 229, the court held, "Building restrictions inserted in all deeds to lots in a high-class residence district should not be frustrated by strained construction of the language"; and to a similar effect is the holding in the case of Green v. Gerner (Tex. Civ. App.) 283 S. W. 615. In Couch v. Southern Methodist University, decided by the Commission of Appeals, 10 S.W.(2d) 973, 974, we find the following comprehensive language used: "So that, after all lots, or as in this case a majority thereof, are sold, the conditions become primarily for the benefit of purchasers. * * * The first rule in construing a written instrument always is to seek to arrive at the intention of the parties to the end that their purpose may be effectuated. There are many artificial aids in the inquiry, but at last the intention of the parties as gathered from the instrument as a whole must prevail."

Based on the authorities herein cited as being applicable to the undisputed facts, I respectfully submit that the judgment of the trial court should have been reversed and rendered for appellants.