**EPERNAY COMMUNITY ASSOCIATION, INC.,**
Appellant,

v.

**Saad SHAAR and Jeanette Shaar, Appellees.**

**No. 14–09–01026–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 2011.

William G. Gammon, Robert V. North, Houston, for appellant.

Jeffrey R. Singer, Julia Kurtz Dean, Sugarland, for appellees.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

The homeowners' association for a neighboring subdivision sought to collect fees from two homeowners in a different subdivision relating to the maintenance of certain recreational areas. Following a bench trial the trial court granted declaratory relief in favor of the homeowners. On appeal, the homeowners' association as-

serts that the trial court erred in making these declarations and in denying its plea in abatement. We conclude the trial court erred in making one declaration, but did not err in making the other declarations or in denying the plea in abatement. Accordingly, we modify the trial court's judgment to delete the erroneous declaration and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1975, a declaration of restrictive covenants was filed for a subdivision known as "Epernay" ("Subdivision One"). Appellant/defendant, Epernay Community Association, Inc. ("Association One"), is a nonprofit corporation that is the homeowners' association for Subdivision One, which contains certain recreational areas relating to this litigation ("Recreational Areas").

In 1977, a declaration of restrictive covenants was filed for record pertaining to a subdivision known as "Epernay Section 2" ("Subdivision Two"). A few weeks after these restrictive covenants were filed for record, a "Recreational Areas Use Agreement" was filed for record ("Original Agreement"). Association One, another entity, and Greenmark, Inc., a corporation that then owned the land comprising Subdivision Two, entered into the Original Agreement.

Epernay Section 2 Community Association, Inc. ("Association Two"), was the homeowners' association for Subdivision Two. In July 1980, Association One and Association Two entered into an "Amended and Restated Recreational Areas Use Agreement," which was filed for record later that year ("Amended Agreement"). The Texas Secretary of State ordered the charter of Association Two forfeited in 1981 for its failure to file a franchise tax report, and Subdivision Two no longer has an operating homeowners' association.

Under the Amended Agreement, (1) homeowners in Subdivision Two purportedly are required to pay Association One an annual fee to provide for the maintenance of the Recreational Areas, and (2) Association Two purportedly transfers to Association One all rights and remedies available to Association Two under the Subdivision Two restrictive covenants ("Restrictive Covenants"), so that Association One can use these rights and remedies to collect the annual fee provided for in the Amended Agreement.

Appellees/plaintiffs Saad Shaar and Jeanette Shaar are the owners of a lot in Subdivision Two ("Property") that is subject to the Restrictive Covenants. After Association One sought to assess and collect annual fees under the Amended Agreement against the Shaars, they filed suit against Association One, seeking, among other things, declaratory relief. The Shaars asserted that Association One does not have any authority to assess or collect these fees from the Shaars and that Association One is not entitled to assert any claim against the Property. Association One counterclaimed seeking declarations that (1) the Amended Agreement and Restrictive Covenants are valid instruments that govern the Property; (2) the Amended Agreement establishes a valid lien against the lots of all Subdivision Two lot owners, including the Shaars; (3) Association One has the right to enforce the Amended Agreement, assess and collect recreational usage assessments, and foreclose upon the lien established by the Amended Agreement, against Subdivision Two lot owners, including the Shaars. Association One also sought to collect allegedly past-due fees from the Shaars, to obtain recognition of a lien in favor of Association One for these amounts, and to foreclose on this lien.

Association One filed a plea in abatement, asking the trial court to abate the case and to order the Shaars to join the other homeowners in Subdivision Two. The trial court denied this plea in abatement, and the claims proceeded to trial.

After a bench trial, the trial court rendered judgment, making the following declarations:

[Association One] improperly enforced collection of Recreational Use fees and/or assessments from [the Shaars].

[Association One] has no legal right or authority to enforce any restrictions, conditions, covenants, reservations, liens, or charges as to [the Shaars] or the Property.

[Association One] had no legal right or authority to file suit against [the Shaars] to enforce collection of Recreational Use fees and/or assessments.

[Association One] had no legal right or authority to file a Notice of Unpaid Assessments against [the Shaars] and the Property to enforce collection of Recreational Use fees and/or assessments.

[Association One] has no legal right or authority to enforce a claim for usage fees against [the Shaars] or the Property.

. . .

[The Shaars'] use of the [Recreational Areas] was a condition precedent to any obligation to pay any Recreational Use assessments.

The trial court denied the relief sought by Association One in its counterclaims and awarded the Shaars reasonable and necessary attorney's fees. The trial court filed findings of fact and conclusions of law. Association One has appealed.

## II. STANDARDS OF REVIEW

■ Because this was a bench trial, the trial judge issued findings of fact and conclusions of law. We review the trial court's conclusions of law de novo. *Johnston v. McKinney,* 9 S.W.3d 271, 277 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). Incorrect conclusions of law will not require a reversal if the controlling facts support a correct legal theory. *Id.* The findings of fact in a bench trial have the same force and dignity as a jury verdict, and we review them for legal sufficiency of the evidence under the same standards we apply in reviewing a jury's findings. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991).

■ In this case, the trial court was asked to render judgment based upon instruments filed for record in the Real Property Records of Harris County. These instruments are subject to the general rules of contract construction. *See Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). In construing contracts, our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex.1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). Ambiguity does not arise simply because the parties offer conflicting interpretations. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc.,* 939 S.W.2d at 121. But, when a written contract is worded so that it can be

given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co.,* 124 S.W.3d at 157.

### III. ISSUES AND ANALYSIS

### A. Is the Amended Agreement binding upon the Shaars under the terms of the Restrictive Covenants?

■ The Shaars agree that the Original Agreement is binding on them. But the Original Agreement does not impose upon the homeowners in Subdivision Two any obligation to pay an annual fee to Association One, nor does it give Association One any of the enforcement powers against the homeowners in Subdivision Two that Association One seeks to exercise against the Shaars. Association One does not assert that the Original Agreement gives it these powers. Instead, Association One relies upon the Amended Agreement, and asserts that this agreement is binding on the Shaars as a covenant running with the Property under the following article XXIX from the Restrictive Covenants:

*Recreational Areas*

[Greenmark] hereby reserves the right to enter into, for itself, [Association Two] and all Owners [of a lot in Subdivision Two] other than [Greenmark], an agreement with Texas Commerce Bank National Association, [Association One], or other parties relating to the use by all of the Owners [of a lot in Subdivision Two] of [the Recreational Areas].... All Owners [of a lot in Subdivision Two] and [Association Two] shall be bound by all of the terms and provisions of any such agreement entered into by [Greenmark], and each Owner [of a lot in Subdivision Two] shall pay and be responsible for the payment of any and all fees and charges to be paid by him pursuant to said agreement, subject, however, to the terms thereof. [Association Two] shall have the rights and powers conferred upon it in Articles XX and XXVI above, as well as any other remedies at law or in equity, to enforce the payment of said fees and charges by any Owner. Nothing herein contained shall be deemed to confer upon the owner of any properties within [Subdivision One] or upon any homeowner's association or other entity relating thereto any rights to enforce or benefit from any terms or provisions of this Declaration.

Under the unambiguous language of this article, (1) Greenmark has the authority to enter into an agreement with Association One relating to the Recreational Areas; (2) such an agreement is binding upon Association Two and all owners of lots in Subdivision Two; and (3) Association Two has the power to enforce the payment of said fees and charges by the owners in Subdivision Two. Neither Greenmark nor any entity purporting to act as Greenmark's successor or assignee entered into the Amended Agreement. Under the terms of the Amended Agreement, the homeowners in Subdivision Two are purportedly required to pay an annual fee to Association One, and Association Two has no power to enforce the payment of these fees or any other fees or charges prescribed in the Amended Agreement. Instead, under the Amended Agreement, Association Two purports to assign to Association One all of Association Two's rights, powers, and authority to enforce collection of the fees and charges prescribed in the Amended Agreement. For the foregoing reasons, the Amended Agreement is not within the scope of the agreement authorized under Article XXIX

of the Restrictive Covenants.[1] There is no provision of the Restrictive Covenants under which the Amended Agreement is made binding upon the Shaars. Accordingly, the Amended Agreement is not binding upon the Shaars under the Restrictive Covenants.

**B. Even if the Amended Agreement is not binding upon the Shaars under the terms of the Restrictive Covenants, can the provisions of the Amended Agreement be considered valid restrictive covenants binding upon the Shaars?**

▮ Association One also asserts that, even without relying upon the Restrictive Covenants, the Amended Agreement is a valid restrictive covenant binding upon the Shaars and running with the land in Subdivision Two. But under the unambiguous language of the Restrictive Covenants, (1) Association One has no right to enforce or benefit from any of the provisions of the Restrictive Covenants; and (2) the only procedure for amending the Restrictive Covenants is provided in Article XXXII of the Restrictive Covenants. Under this article, the Restrictive Covenants may be amended during the first thirty years of their existence by an instrument signed by members of Association Two entitled to cast not less than ninety percent of the aggregate votes of both classes of membership, and thereafter by an instrument signed by members of Association Two entitled to cast not less than seventy-five percent of the aggregate votes of both classes of membership. By purportedly giving Association One rights to enforce or benefit from provisions of the Restrictive Covenants, the parties to the Amended Agreement sought to amend the Restrictive Covenants in a manner not prescribed under the terms of the Restrictive Covenants. When the Amended Agreement was signed and filed for record, restrictive covenants could not be amended by a method not provided for in the original instrument containing the restrictive covenants. *See Loving v. Clem*, 30 S.W.2d 590, 592 (Tex.Civ.App.-Dallas 1930, writ ref'd); *Hanchett v. East Sunnyside Civic League*, 696 S.W.2d 613, 615 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.).

Since the Amended Agreement was signed and filed for record in 1980, the Texas Legislature has enacted various statutes providing statutory procedures under which restrictive covenants may be amended. *See* Act of May 24, 1985, 69th Leg., R.S., ch. 309, § 1, 1985 Tex. Gen. Laws 1364, 1364–68 (amended 1987, 1989, 1991, 1997, 1999, 2005, 2007) (current version at Tex. Prop.Code Ann. § 201.001, *et seq.*); Act of May 27, 1995, 74th Leg., R.S., ch. 1040, § 2, 1995 Tex. Gen. Laws 5170, 5171–75 (amended 2007, 2009) (current version at Tex. Prop.Code Ann. § 204.001, *et seq.*); Act of May 26, 1999, 76th Leg., R.S., ch. 871, § 2, 1999 Tex. Gen. Laws 3554, 3554–56 (amended 2001) (current version at Tex. Prop.Code Ann. § 208.001, *et seq.*); Act of May 20, 2005, 79th Leg., R.S., ch. 1180, § 1, 2005 Tex. Gen. Laws 3866, 3866–68 (current version at Tex. Prop.Code Ann. § 210.001, *et seq.*); Act of May 25, 2005, 79th Leg., R.S., ch. 1180, § 1, 2005 Tex. Gen. Laws 3564, 3564–57 (current version at Tex. Prop.Code Ann. § 211.001, *et seq.*). The Amended Agreement is not a valid amendment to the Restrictive Covenants under any of these

---

1. In contrast, Greenmark was a party to the Original Agreement and, under that agreement, the homeowners in Subdivision Two had to pay an annual fee for the use of the Recreational Areas to Association Two, rather than Association One. In addition, in the Original Agreement, Association Two did not purport to assign to Association One any of Association Two's rights, powers, and authority to enforce collection of these fees.

statutes, and Association One has not argued to the contrary. *See* Tex. Prop.Code Ann. § 201.006(b) (West 2007); *id.* § 204.003, 204.005(b) (West Supp. 2010 & West 2007); *id.* § 208.002(b) (West 2007); *id.* § 210.002 (West 2007); *id.* § 211.002 (West 2007). Thus, to the extent that the parties to the Amended Agreement purport to transfer from Association Two to Association One the former's enforcement powers under the Restrictive Covenants or the right to benefit from the provisions of the Restrictive Covenants, the Amended Agreement is invalid. Therefore, standing on its own, the Amended Agreement does not give Association One the enforcement powers that Association One claims in the case under review.

Having rejected all of Association One's appellate challenges to the trial court's first five declarations, we conclude that the trial court did not err in granting this declaratory relief.

## C. Was the Shaars' use of the Recreational Areas a condition precedent to any obligation to pay assessments regarding the Recreational Areas?

■ In one declaration, the trial court concluded that the Shaars' use of the Recreational Areas was a condition precedent to any obligation by the Shaars to pay assessments regarding the Recreational Areas. On appeal, Association One challenges this declaration. Presuming for the sake of argument that the Amended Agreement were binding upon the Shaars in this regard, this agreement purports to impose an obligation upon the homeowners in Subdivision Two to pay Association One an annual fee "for the use of the Recreational Areas, which fee shall be a part of the annual assessment described in Article XX of the [Restrictive Covenants]." If homeowners in Subdivision Two fail to timely pay these fees, then, under the Amended Agreement, Association One purportedly may suspend these homeowners' "rights of use and enjoyment of the Recreational Areas." We conclude that if the Amended Agreement were binding upon the Shaars, the Shaars' use of the Recreational Areas would not be a condition precedent to any obligation by the Shaars to pay fees or assessments regarding the Recreational Areas. Likewise, to the extent the trial court based its declaration upon the Original Agreement, under that agreement, the Shaars' use of the Recreational Areas is not be a condition precedent to any obligation by the Shaars to pay fees or assessments regarding the Recreational Areas. Therefore, we conclude that the trial court erred in declaring that the Shaars' use of the Recreational Areas was a condition precedent to any obligation by the Shaars to pay any assessments regarding the Recreational Areas.[2]

## D. Did the trial court abuse it discretion by denying Association One's plea in abatement?

■ In its second issue, Association One asserts that the trial court abused its discretion by denying its plea in abatement, in which Association One requested that the trial court abate the case and order the Shaars to join as parties the other homeowners in Subdivision Two, whose rights and interests Association One

---

2. In the Original Agreement, the parties agree that Association One has the right to charge homeowners in Subdivision Two a "use fee for the use of the Recreational Areas." The Amended Agreement contains similar language. But nothing in the record reflects that Association One is seeking to exercise this right against the Shaars, and this language does not create a condition precedent as to the Shaars' obligation to pay the annual fee to Association Two under the Original Agreement or the Shaars' purported obligation to pay the annual fee to Association One under the Amended Agreement.

claims would be prejudiced by a declaratory judgment in this case absent their joinder. Association One invokes both Texas Civil Practice and Remedies Code section 37.006(a) and Texas Rule of Civil Procedure 39(a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2008); Tex.R. Civ. P. 39(a). Under the former statute, "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem.Code Ann. § 37.006(a). Section 37.006(a) also provides that "[a] declaration does not prejudice the rights of a person not a party to the proceeding." *Id.* The Supreme Court of Texas has concluded that the determination of which parties, if any, must be joined under section 37.006(a) should be made using the legal standard from Texas Rule of Civil Procedure 39. *See* Tex.R. Civ. P. 39; *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 162 (Tex.2004). Under this rule, entitled, "Joinder of Persons Needed for Just Adjudication," "[a] person who is subject to service of process shall be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."[3] Tex.R. Civ. P. 39(a).

When the trial court denied Association One's plea in abatement, the Shaars were requesting in their petition the following declarations from the trial court: (1) "that [Association One] has no legal authority to assess, pursue or seek collection of assessment fees for recreational areas in [Subdivision One] from [the Shaars]," (2) "that no contractual lien for assessments in favor of [Association One] exists against the Property," and (3) Association One is not legally entitled to assert any claim against the Property." These requested declarations are all limited to the Shaars and their Property. The Shaars did not seek a declaration regarding the rights of other homeowners in Subdivision Two, and the Shaars did not seek a declaration regarding the validity or status of the Amended Agreement.

Before asserting its plea in abatement, Association One filed a counterclaim against the Shaars asking the trial court to declare that (1) "[the Amended Agreement] and [Restrictive Covenants] are valid governing instruments to which [sic] the [Shaars] purchased their property subject to [sic]," (2) the [Amended Agreement] establishes a valid lien against the lots of all [Subdivision Two] lot owners including the [Shaars]," (3) "[Association One] has the right to enforce the [Amended Agreement], assess and collect recreational usage assessments, and foreclose upon the lien established by the [Amended Agreement], against [Subdivision Two] lot owners including the [Shaars]." Though it sought declaratory relief expressly covering all Subdivision Two owners, Association One did not join any other Subdivision Two owners to its claims for declaratory relief, nor did Association One assert that joinder of these owners was necessary as to Association One's counterclaim.

After asserting its counterclaim for declaratory relief against the Shaars, Association One filed its plea in abatement, in

---

**3.** Under Rule 39(a), a person subject to service of process also should be joined as a party if "in his absence complete relief cannot be accorded among those already parties." Tex.R. Civ. P. 39(a). Association One has not argued that this part of Rule 39(a) applies in the case under review, and any such argument would lack merit.

which it asked the trial court to order the Shaars to join all other Subdivision Two homeowners to the suit and to dismiss the Shaars's claims if they failed to do so. Association One asserted that there were at least 74 other homeowners in Subdivision Two, but Association One did not provide the trial court with any evidence as to the identity, number, or interests of these other homeowners.[4] On this record, we conclude that the trial court did not err by impliedly finding that Association One had failed to show that Rule 39(a) required the joinder of the other homeowners in Subdivision Two. Accordingly, the trial court did not abuse its discretion when it denied Association One's plea in abatement.[5] *See Acosta v. Tri State Mortgage Co.*, 322 S.W.3d 794, 803–04 (Tex.App.-El Paso 2010, no pet.) (holding that record supported trial court's determination that the bank did not have to be joined under Rule 39(a)); *Barraza v. Law Offices of Smith &*

*Gopin,* 918 S.W.2d 608, 610–12 (Tex.App.-El Paso 1996, no writ) (holding that on record before the court Rule 39(a) did not require joinder of party).[6]

## IV. Conclusion

The trial court did not err in making its first five declarations, and we overrule the first issue to this extent. But the trial court erred in declaring that the Shaars' use of the Recreational Areas was a condition precedent to any obligation by the Shaars to pay any assessments regarding the Recreational Areas, and we sustain the first issue to this extent. Because the trial court did not abuse its discretion by denying Association One's plea in abatement, we overrule the second issue. Accordingly, we modify the trial court's judgment to delete the declaration that the Shaars' use of the Recreational Areas was a condition precedent to any obligation by the Shaars to pay any assessments regarding the Re-

---

4. The trial court held a hearing on Association One's plea in abatement on December 12, 2008. Our appellate record does not contain any reporter's record from this hearing. Association One attaches to its appellate brief a reporter's record purporting to be from this hearing; however, this reporter's record is not part of our appellate record, so we cannot consider it. *See Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210–11 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (stating that, with limited exceptions not relevant in the case under review, an appellate court may not consider matters outside the appellate record). This was a pretrial hearing rather than a trial, and there is no argument by any party or other indication in the record that evidence was offered at this hearing. Therefore, the absence of a reporter's record does not trigger the common-law presumption that evidence was admitted at the hearing that supports the trial court's ruling. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 782–83 (Tex. 2005).

5. We also note that, under the Declaratory Judgments Act, the rights of the other home-

owners in Subdivision Two are not prejudiced by the trial court's declaratory judgment in this case. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.006(a); *Brooks,* 141 S.W.3d at 163.

6. Association One relies upon *Dahl v. Hartman. See* 14 S.W.3d 434, 435–36 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In *Dahl,* the plaintiff sought declarations that the property owners' association for a subdivision was not validly formed and that the all of the subdivision's deed restrictions had not been validly extended beyond their original expiration date. *See id.* This relief was much broader than the relief sought by the Shaars when the trial court denied Association One's plea in abatement. *See id.* In addition, in *Dahl,* the trial court granted the defendant's plea in abatement and ordered the plaintiff to serve all property owners in the subdivision. *See id.* The trial court in *Dahl* found that the plaintiff sought a declaration that the deed restrictions were invalid and that this declaration would affect the interests of all property owners in the subdivision. *See id.* In the case under review, the trial court made no such rulings or findings. The *Dahl* case is not on point.

creational Areas. As modified, the trial court's judgment is affirmed.