# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00081-CV

**James Sylvester, Ken Yarborough, and Josephine Miller, Appellants**

**v.**

**Texas Association of Business; Bill Hammond; BACPAC; CIGNA Healthcare of Texas, Inc.; and Connecticut General Life Insurance Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-02-004226, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## DISSENTING OPINION

I respectfully dissent.

The majority holds that TAB was not—indeed, could not have been—a "political committee" under the Texas Election Code. As the majority acknowledges, "[i]f TAB was a political committee, it violated the Election Code's requirements to appoint a campaign treasurer and file reports with the TEC." Slip Op. at 12. The defendants' motions for summary judgment relied on the argument that TAB was not a political committee. The crucial question, then, is whether the defendants carried their burden of showing as a matter of law that TAB was not a "political committee" as that term is defined in the Texas Election Code.

***"A Principal Purpose"?***

The Election Code defines "political committee" as "a group of persons that has as a principal purpose accepting political contributions or making political expenditures." Tex. Elec. Code § 251.001(12). The majority first implies that TAB is not a political committee because its primary purpose is as a trade association for the business community. But the Code does not define "political committee" in terms of "the" principal purpose but rather "a" principal purpose. For three reasons, I believe that the only reasonable construction of this language is that the legislature intended to leave open the possibility that a group of persons could have more than one principal purpose. The first reason is that other provisions of the Election Code itself confirm the legislature's intention. For example, the Code defines "General-purpose committee" to mean "a political committee *that has among its principal purposes . . . .*" *Id.* § 251.001(14) (emphasis added). Similarly, the Code defines "Specific-purpose committee" to mean "a political committee *that does not have among its principal purposes* those of a general-purpose committee *but does have among its principal purposes . . . .*" *Id.* § 251.001(13) (emphases added). These provisions make it clear that the statute contemplates that a group of persons can have more than one principal purpose. The second reason is that federal courts construing the phrase "a principal purpose" as used in ERISA have uniformly held that an employer may have more than one principal purpose under that Act. *See, e.g.*, *Sherwin-Williams Co. v. New York State Teamsters Conference Pension, Ret. Fund*, 158 F.3d. 387, 395 (6th Cir. 1998); *Santa Fe Pac. Corp. v. Central States, Se. and Sw. Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir. 1994); *Lopresti v. Pace Press, Inc.*, 868 F. Supp. 2d 188, 201 (S.D.N.Y. 2012). And finally, the Texas Supreme Court has, albeit in a different context,

2

recognized that the phrase "principal purpose" does not imply a limitation to a single purpose. *See In re Blair*, 408 S.W.3d 843, 847 (Tex. 2013) ("We are not persuaded that providing support for rejoining society is the only, *or even a principal*, purpose of the compensation required by the [Tim Cole] Act." (emphasis added)).

The defendants filed traditional motions for summary judgment, not no-evidence motions. *See* Tex. R. Civ. P. 166a(c), (i). Accordingly, they had the burden to prove the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Rule 166a(c). Specifically, they had the burden to prove as a matter of law that TAB did *not* have as one of its principal purposes "accepting political contributions or making political expenditures." The summary-judgment record contains scant evidence from which to determine TAB's purposes. The affidavit of William Hammond states that "TAB promotes the free enterprise system by working to improve the Texas business climate and to help make our state's economy the strongest in the world. Additionally, TAB lobbies on every issue that impacts business to ensure that employers' opinions are being heard." The most that can be said about this evidence is that it demonstrates that *one* of TAB's principal purposes is to promote the interests of the business community. It says nothing, however, about what other purposes TAB might have.[1] The summary-judgment evidence therefore does not support the grant of summary judgment for TAB on the basis that its only principal purpose is as a trade association for the business community.

---

[1] The summary-judgment evidence does, however, show that TAB solicited, accepted, and spent more than $1.8 million on the political mailers at issue in this case, raising the inference that one of TAB's purposes—perhaps one of its principal purposes—lies in the political realm.

3

*Incompatible Statutory Provisions?*

The majority also appears to assert that TAB is not a political committee because the Election Code provisions dealing with corporations are incompatible with the Code provisions dealing with political committees. With certain exceptions, the Election Code prohibits corporations from making political contributions. *See* Tex. Elec. Code § 253.094. A political committee, on the other hand, may make political contributions and expenditures as long as the committee appoints a campaign treasurer and reports its contributions and expenditures. *See id.* § 253.031. The majority seems to argue that the application of these provisions to TAB is inherently incompatible, meaning that a corporation can *never* be a political committee irrespective of what its principal purposes are.

In my opinion, the two statutory provisions are not irreconcilably incompatible or repugnant. Requiring a corporation whose activities bring it within the definition of a political committee to appoint a campaign treasurer before making or accepting campaign contributions or making campaign expenditures is, for example, no more incompatible than prohibiting the possession of marihuana, Tex. Health & Safety Code § 481.121, while at the same time imposing a tax on any marihuana that is possessed, Tex. Tax Code § 159.201. While it is possible that double jeopardy issues could arise, *see Ex parte Ward*, 964 S.W.2d 617, 628-33 (Tex. Crim. App. 1998), there is no inherent repugnancy or incompatibility between the two statutes. Indeed, the Texas Ethics Commission has recognized that, depending on its activities, a corporation can constitute a political committee. *See* Op. Tex. Ethics Comm'n No. 242 (1995); *see also* Tex. Elec. Code § 253.092. The Ethics Commission has also held, post-*Citizens United*, that a corporation that makes direct campaign expenditures must comply with disclosure requirements:

4

> Considering title 15 of the [Texas] Election Code, the impact of *Citizens United*, and the additional factors stated previously, our opinion is that the legislature intended title 15 to require a corporation, labor organization, or other person that makes one or more direct campaign expenditures from its own property in connection with an election of a candidate to comply with section 253.062 [of the Election Code] as if it were an individual. Therefore, a corporation, labor organization, or other person that makes such expenditures must comply with the disclosure requirements that apply to an individual under section 253.062.

Op. Tex. Ethics Comm'n No. 489 (2010).

### *Express Advocacy?*

Finally, although the majority does not address the issue of "express advocacy," there is no question in my mind that the "magic words" test of *Buckley v. Valeo*, 424 U.S. 1 (1976), is not the applicable test here. First, the United States Supreme Court adopted a "functional equivalent" test in *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 193-94 (2003), *overruled on other grounds by Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010). Later, in *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007), the Chief Justice's controlling opinion further refined the functional-equivalent test, holding that an ad could be regulated if it "is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* at 470. The Chief Justice's opinion expressly rejected the "magic words" test. *See id.* at 474 n.7. Finally, even in *Citizens United*, the Court did not use the magic-words test, concluding that one ad qualified as the functional equivalent of express advocacy. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 324-25 (2010). I believe that

5

"functional equivalent" or "no reasonable interpretation" is the proper test for evaluating whether the materials in the present case were subject to the restrictions contained in the Election Code.

I will not unnecessarily extend this opinion with a lengthy discussion of the specific materials disseminated by TAB. Suffice it to say that even a casual review of them leads inescapably to the conclusion that they are "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." Accordingly, I would reverse the trial court's summary judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Filed:  December 19, 2014