# IN THE SUPREME COURT OF TEXAS

═══════════════
No. 11-0441
═══════════════

IN RE MICHAEL N. BLAIR, RELATOR

═══════════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════════

**Argued October 17, 2012**

JUSTICE HECHT announced the decision of the Court and delivered an opinion, in which JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE DEVINE joined.

JUSTICE BOYD filed an opinion concurring in the decision, in Part IV of which JUSTICE WILLETT and JUSTICE LEHRMANN joined.

JUSTICE LEHRMANN filed a dissenting opinion, in which CHIEF JUSTICE JEFFERSON, JUSTICE JOHNSON and JUSTICE WILLETT joined.

The Tim Cole Act[1] entitles a person who has been wrongfully imprisoned to compensation from the State, but payments terminate "if, after the date the person becomes eligible for compensation . . . , the person is convicted of a crime punishable as a felony."[2] The issue in this case is whether the Act requires payments to a felon who remains incarcerated for a conviction that occurred before he became eligible for compensation. We conclude it does not and therefore deny relief.

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 103.001–.154.

[2] *Id.* § 103.154(a).

Michael N. Blair has a lengthy criminal record. In November 1988, at age 18, he was charged with two felonies, burglary of a habitation and indecency with a child, and sentenced to 10 years' imprisonment on each, the sentences to run concurrently. He served 18 months of those sentences and was paroled in April 1990. His parole was revoked after he was arrested in September 1993 for the murder of a seven-year-old girl, Ashley Estelle. A year later, he was convicted and sentenced to death.[3] Though Blair staunchly maintained that he was innocent of murder, he freely admitted to having sexually abused children on many occasions. In June 2001, a journalist who interviewed him on death row reported that he acknowledged having sexually assaulted more than a dozen children, both boys and girls, and was, "by his own accounts, . . . a serial child molester".[4] In 2003, still awaiting execution, Blair wrote to the district court, confessing to molesting the children of a witness who later testified against him in the murder trial. An investigation led to four indictments for indecency with a child, committed in 1992 and 1993, to which Blair pleaded guilty in June 2004. He was given four life sentences, three consecutive and one concurrent. He continues to serve these sentences and will likely spend the rest of his life in prison.

---

[3] Ashley's death prompted the Legislature in its next session to enact heightened reporting, registration, and supervision requirements, and stricter punishments, for persons convicted of sexual assault of a child. The enactments were called "Ashley's Laws". *See* Act of May 26, 1995, 74th Leg., R.S., ch. 256, 1995 Tex. Gen. Laws 2190 (SB 111) (amending TEX. CODE CRIM. PROC. arts. 42.12 and 42.18, and adding TEX. GOV'T CODE § 493.017); Act of May 19, 1995, 74th Leg., R.S., ch. 257, 1995 Tex. Gen. Laws 2194 (SB 149) (amending TEX. CODE CRIM. PROC. § 42.12 and adding TEX. REV. CIV. STAT. ANN. art. 4512g-1); Act of May 19, 1995, 74th Leg., R.S., ch. 258, 1995 Tex. Gen. Laws 2197 (SB 267) (amending TEX. REV. CIV. STAT. ANN. art. 6252-13c.1 and TEX. CODE CRIM. PROC. arts. 42.01, 42.12, 42.18, and 60.051).

[4] Jacque Hilburn, *Did This Creep Really Kill Ashley Estell?*, D MAGAZINE (June 2001).

In 2008, the Court of Criminal Appeals set aside Blair's murder conviction based on DNA evidence establishing his actual innocence,[5] and the State dismissed the charge. In June 2009, Blair applied to the Comptroller for more than $1 million compensation for having been wrongfully incarcerated from 1993, when he was arrested for murder, to 2004, when he was sentenced for the 1992–1993 sexual abuse offenses.[6] The Comptroller initially denied Blair's application because he had not provided a court order showing his "actual innocence" of murder[7] and had not "negate[d] whether a concurrent sentence was served, either in prison or on parole, for another crime or crimes" while he was on death row, apparently referring to the 1988 offenses. Blair moved for reconsideration, arguing that the Court of Criminal Appeals' ruling established his actual innocence, and that he had served concurrent sentences for other crimes only because his murder conviction resulted in his parole being revoked for the 1988 offenses. But for the murder conviction, Blair argued, he would not have been returned to prison, and therefore he was entitled to compensation for the full period claimed. The Comptroller again denied Blair's application, this time because "he is currently incarcerated" and "[t]he Legislature clearly intends [compensation under the Act] to be provided only to eligible applicants in order that they might put their lives back together after their

---

[5] *Ex parte Blair*, Nos. AP-75954 and AP-75955, 2008 Tex. Crim. App. Unpub. LEXIS 469, 2008 WL 2514174 (Tex. Crim. App. June 25, 2008) (per curiam) (not designated for publication) ("The trial court finds, 'The State of Texas has conceded that, in light of the remaining inculpatory evidence in the record, [Blair] has established by clear and convincing evidence that no reasonable juror would have convicted him in light of newly discovered [DNA] evidence.'").

[6] Blair sought compensation of $100,000 per year allowed for death row inmates at the time, for a period of 10 years, 253 days. *See* Act of May 25, 2007, 80th Leg., R.S., ch. 1190, § 2, 2007 Tex. Gen. Laws 4054 (codified as TEX. CIV. PRAC. & REM. CODE § 103.052(a-1)).

[7] At the time, a requirement for compensation was that the applicant had been "granted relief on the basis of actual innocence of the crime for which the person was sentenced." Act of May 27, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280 (codified as TEX. CIV. PRAC. & REM. CODE § 103.001(a)(2)(B)).

3

release." The Comptroller added that even if Blair were entitled to compensation, it would not cover "the period during which he served [his 1988 sentences] concurrently with his sentence and incarceration for capital murder" as a result of his parole revocation. We denied review.[8]

The Comptroller asserted this latter position regarding parole revocation in *In re Smith*.[9] Smith's wrongful conviction had resulted in revocation of his parole for a prior offense, and for awhile he was imprisoned for both. When his wrongful conviction was set aside, he claimed compensation for the entire time he had been imprisoned, including as a result of his parole revocation. The issue was "whether a parolee, whose parole is revoked because of a wrongful conviction, is entitled to compensation under the Act for the period of imprisonment the parolee would have otherwise served out of prison on parole."[10] We concluded that the Act does not preclude compensation for time that would have been spent on parole. Following our decision in that case, Blair filed a second application with the Comptroller in March 2011, arguing that his situation was similar to Smith's. In one respect it was: Blair's wrongful murder conviction in 1994 resulted in the revocation of his parole for prior offenses — burglary and indecency with a child. But the Comptroller responded that Blair's claim had been denied not because he, like Smith, had been imprisoned for awhile as a result of both his parole revocation as well as for the offense of which he was wrongly convicted, but rather because, unlike Smith, he was incarcerated for yet other offenses — the 2004 child molestation convictions — when he became eligible for compensation

_____

[8] 53 Tex. Sup. Ct. J. 561, 564 (Apr. 12, 2010).

[9] 333 S.W.3d 582 (Tex. 2011).

[10] *Id.* at 586.

4

in 2009. Observing that Blair's second application was "virtually identical" to the first, the Comptroller again denied compensation.

Section 103.001(a) of the Act states in pertinent part:

> A person is entitled to compensation if:
>
> (1)    the person has served in whole or in part a sentence in prison under the laws of this state; and
>
> (2)    the person: . . .
>
>> (B)    has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced . . . .[11]

The Comptroller does not dispute that Blair meets all these requirements but argues that the purpose of the Act is to help released inmates rebuild their lives and reintegrate into society, which would not be advanced by paying compensation to someone still in prison. The Legislature could not have intended so absurd a result, the Comptroller continues, and therefore the Act cannot be read literally.

We are not persuaded that providing support for rejoining society is the only, or even a principal, purpose of the compensation required by the Act. For one thing, Section 103.001(c), two paragraphs below the provision just quoted, states that "[i]f a deceased person would be entitled to compensation under Subsection (a)(2) if living, including a person who received a posthumous pardon, the person's heirs, legal representatives, and estate are entitled to lump-sum compensation . . . ."[12] The Act thus requires compensation to be paid even if the wrongfully convicted person

---

[11] TEX. CIV. PRAC. & REM. CODE § 103.001(a).

[12] *Id.* § 103.001(c).

5

cannot rejoin society because he is dead. For another thing, criminal justice officials have a responsibility for helping wrongfully convicted inmates return to society that is independent of the compensation required by the Act. The Department of Criminal Justice is statutorily tasked with "develop[ing] a comprehensive plan to ensure the successful reentry and reintegration of wrongfully imprisoned persons into the community following discharge", including "the provision of financial assistance to aid a wrongfully imprisoned person in the reentry and reintegration process and in covering living expenses following discharge, in an amount not to exceed $10,000."[13] And the Texas Correctional Office on Offenders with Medical or Mental Impairments is required to assist wrongfully imprisoned persons in obtaining medical and dental services.[14] The Comptroller argues that these two latter provisions show that the State's policy is to aid a wrongfully imprisoned person only after discharge, not while he remains imprisoned, and that payment of compensation to a decedent's beneficiaries is simply an exception that proves the rule. But these provisions strongly suggest that the compensation required by the Act is different from the simple support the provisions provide for reintegration into society and is better viewed as reparation for the wrong done in the State's name.

And from the history of the Act, that view is compelling. First adopted in 1965,[15] the Act contained legislative findings that wrongfully convicted persons should be provided "compensation

---

[13] TEX. GOV'T CODE § 501.102(b).

[14] TEX. HEALTH & SAFETY CODE § 614.021(b).

[15] A constitutional amendment adopted in 1956 authorized the Legislature to "grant aid and compensation to any person who has heretofore paid a fine or served a sentence in prison, or who may hereafter pay a fine or serve a sentence in prison, under the laws of this State for an offense for which he or she is not guilty". TEX. CONST. art. III, § 51-c.

to reimburse and compensate them for their losses."[16] The Act allowed a cause of action against the State for "compensation" for "damages" — specifically, up to $25,000 for physical and mental pain and suffering, plus all reasonable and necessary medical expenses incurred, the total of both not to exceed $50,000.[17] In 2001, the Act was substantially revised.[18] A claimant could sue the State to recover the expenses and attorney fees incurred in his criminal proceedings and in obtaining his discharge from imprisonment, plus lost wages and medical expenses incurred.[19] Alternatively, the Act provided an administrative remedy: a claimant could simply request payment from the Comptroller of $25,000 for each year he was wrongfully imprisoned.[20] Either way, recovery was capped at $500,000.[21] In 2007, the per-year compensation was raised to $50,000, or $100,000 for a person sentenced to death, a provision for the recovery for child support payments that became due during imprisonment was added, and the cap was removed.[22] In 2009, the per-year compensation was raised to $80,000 for all sentences, and the cause of action for damages was abolished, leaving

---

[16] Act of May 28, 1965, 59th Leg., R.S., ch. 507, § 1, 1965 Tex. Gen. Laws 1022 (codified as TEX. PENAL CODE art. 1176a, §§ 1–7). The Act was recodified as TEX. REV. CIV. STAT. ANN. art. 6252-25, § 1 in 1973, and later as TEX. CIV. PRAC. & REM. CODE §§ 103.001–.007. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3307– 3308.

[17] *Id*. § 6 (former TEX. PENAL CODE art. 1176a, § 6, TEX. REV. CIV. STAT. ANN. art. 6252-25, § 6, TEX. CIV. PRAC. & REM. CODE § 103.006).

[18] Act of May 27, 2001, 77th Leg., R.S., ch. 1488, § 1, 2001 Tex. Gen. Laws 5280, 5282 (codified as TEX CIV. PRAC. & REM. CODE, ch. 103).

[19] *Id*. *See* former TEX. CIV. PRAC. & REM. CODE § 103.105(a), *repealed by* Act of May 27, 2009, 81st Leg., R.S., ch. 180, § 12, 2009 Tex. Gen. Laws 523, 526.

[20] *Id*. §§ 103.051–.052.

[21] *Id*. §103.105.

[22] Act of May 25, 2007, 80th Leg., R.S., ch. 1190, § 2, 2007 Tex. Gen. Laws 4054, 4055.

only the administrative remedy.[23] Thus, for 48 years, the Act's compensation schemes have all been backward-looking, providing either for damages actually incurred or suffered, or for what amounts to liquidated damages based on time served. The compensation required by the Act has never been based on or related to the costs of an inmate's reentry into society.

Moreover, when the Legislature first exhibited concern for those costs, it created an independent remedy: as noted above, criminal justice institutions were given the responsibility to assist wrongfully imprisoned persons in reentering society.[24] But this did not occur until 2009, decades after damages had been paid for wrongful imprisonment.

The Comptroller is correct that courts will not interpret statutes to work absurd results.[25] But though it would be absurd to make payments to a wrongfully convicted person to assist him in reentering society at a time when he remains imprisoned and cannot use the money for that purpose,[26] it is certainly not absurd to pay reparation for the wrong done while he is still incarcerated. It is simply a policy choice for the Legislature.[27]

We thus cannot agree with the Comptroller that Blair's claim must be rejected because it is inconsistent with the Act's purpose. But there is another difficulty with Blair's claim. The

---

[23] Act of May 27, 2009, 81st Leg., R.S. ch. 180, §§ 3–5, 2009 Tex. Gen. Laws 523, 523–524.

[24] *Id*. §§ 10–15.

[25] *E.g. Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) ("We . . . interpret statutes to avoid an absurd result."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 234 (Thomson/West 2012) ("A provision may be either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve.").

[26] *See Thiel v. Harris Cnty. Democratic Exec. Cmte*., 534 S.W.2d 891, 895 (Tex. 1976) (refusing to accept an interpretation of a statute that "would convict the Legislature of a futile and foolish act").

[27] We do not, of course, consider the validity of such an approach.

compensation due a wrongfully convicted person, with exceptions not applicable here, is payable

only through an annuity.[28]  Section 103.154(a) states:

> [C]ompensation payments to a person . . . terminate if, after the date the person
> becomes eligible for compensation . . . , the person is convicted of a crime punishable
> as a felony.  Compensation payments terminate under this subsection on the date of
> the subsequent conviction.[29]

Blair argues that under this provision, payments to a person convicted of a felony terminate only if

the conviction first occurs after he becomes eligible for compensation, not if it occurs before.  But

Blair's argument assumes that "is convicted" refers only to the act of adjudication.  The day after

adjudication, however, assuming nothing has changed, the person, still, is convicted.  Thus used, the

phrase refers to the convict's status — he stands convicted or is under conviction.  Other adjectives

can similarly be read in this dual sense.  For example, a visiting judge is assigned to a case the day

the order is signed and as long as the assignment lasts.  Likewise, a person in military service is

detached to special assignment the day the order issues and as long as it remains in effect.  Texas

statutes use the phrase, "is convicted", to refer to a person's status.  For example, Article 42.12 of

the Texas Code of Criminal Procedure provides that a judge "after conviction [] may . . . place the

defendant on community supervision."[30]  The statute authorizes the judge to impose a specific

condition on "a defendant who is convicted" of offenses of a certain nature, and in modifying

---

[28] TEX. CIV. PRAC. & REM. CODE § 103.053.  Payments to the state disbursement unit, *see* TEX. FAM. CODE § 101.0302, for child support owed by the wrongfully convicted person are payable in a lump sum, TEX. CIV. PRAC. & REM. CODE § 103.052(c), as are payments to a decedent's beneficiaries, *id.* § 103.001(c).

[29] *Id.* § 103.154(a).

[30] TEX. CODE CRIM. PROC. art. 42.12, § 3(a).

community supervision, to impose particular conditions "if . . . the defendant is convicted" of certain crimes.[31]

In Section 103.154(a), the phrase, "is convicted", can reasonably be read to refer to the claimant's status and not only the moment guilt is adjudicated.[32] Thus construed, the statute denies compensation payments for wrongful imprisonment to a claimant who, during the time he would receive them, is convicted of a felony, regardless of when the conviction was adjudicated, whether before or after he became eligible for compensation. The second sentence clarifies that if the adjudication occurs after the date of eligibility, compensation ceases, though the claimant is not required to refund payments already received. For the claimant adjudicated before eligibility, payments never begin, and refund is not an issue. Though payments never begin, the right to compensation the claimant would have afterward can be said to "terminate" the moment it arises.

The statutory text thus admits of two linguistically reasonable interpretations, but the consequences of one, conditioning compensation on the date conviction is adjudicated, are, we think, plainly unreasonable. This is not because a person who remains incarcerated should not be compensated. That is a policy decision for the Legislature. Rather, granting or denying compensation based on the date a conviction is adjudicated, rather than on the status of having been convicted, is plainly unreasonable because it treats similar situations disparately. If "is convicted" refers to the claimant's status, all eligible claimants are treated alike: those under felony conviction are not paid compensation. But if the phrase refers instead to the act of adjudication, the claimant

---

[31] *Id.* §§ 13H(b); 22(a)(4)(A).

[32] TEX. CIV. PRAC. & REM. CODE § 103.154(a).

10

whose conviction occurs the day before he is eligible for compensation is entitled to payments for the remainder of his life, while the claimant whose conviction occurs the next day never receives compensation. The unreasonableness of such a result is manifest in this case. It would entitle Blair to over $800,000 in compensation to be paid while he remains imprisoned on three consecutive life sentences imposed in 2004, even though he would receive nothing if he had been convicted of a felony the day after he became eligible for compensation in 2008.

Despite such consequences, there might yet be some justification for construing "is convicted" to refer to an act. One might argue that the threat of loss of compensation, once it has begun, deters further criminal activity. But the threat does nothing to deter pre-eligibility crimes. An inmate on the verge of being eligible for compensation might not be discouraged from committing a crime before the determination is made, as he certainly would be afterward. Further, a prosecutor, knowing that an inmate charged with a crime was about to qualify for compensation, might delay criminal proceedings to ensure that payments would be denied. If Blair had confessed to child molestation in 2009 instead of 2004, delaying conviction until after his eligibility for compensation for wrongful imprisonment for murder would have denied him payments to which he would have been entitled had conviction followed swiftly. At a more basic level, Section 103.154(a) does not even hint that deterrence might be its purpose; rather, it strongly suggests that compensation is not to be paid a claimant incarcerated for a felony. Apart from this flawed deterrence argument, we are unable to discern any justification for granting or denying compensation based on the date of conviction for another felony.

We pause to add a word in response to the concurring opinion, which would hold that Blair failed to follow the Act's procedures, though the Comptroller does not make that argument, and that Blair's second application is improper because it is the same as the first.

On the first point, the concurrence argues that a claimant denied compensation must, as a prerequisite for seeking judicial review, submit an application to cure to the Comptroller, even if there is nothing to cure. Section 103.051(d) states: "Not later than the 30th day after the date the denial is received, the claimant must submit an application to cure any problem identified."[33] Plainly, if no identified problem can be cured, no application is required. As the concurrence notes, "cure" does not mean "reconsider". After the Comptroller's first denial of compensation, Blair filed what he called a motion for reconsideration, and should have called an application to cure, that provided a cure for the problems identified: the Comptroller's mistaken view that Blair had not been determined to be actually innocent of murder, and the effect of the parole revocation. After the Comptroller's denial of Blair's second application, now on review, there was nothing to cure. The Comptroller stated a legal basis for denying compensation that, if correct, Blair could not cure. Even if a claimant does not apply to cure a problem in the denial of compensation, we are not convinced that the failure precludes judicial review. The Act's procedures should not be applied to trick unwary applicants out of the compensation they are due.

As for the second point, the Act does not prohibit successive applications, even when circumstances have not changed, and in the absence of such a prohibition, we believe one should not be judicially imposed. The concurrence concedes that a denial of compensation is not res judicata

---

[33] TEX. CIV. PRAC. & REM. CODE § 103.051(d).

12

of a subsequent application, but it would apply much the same bar to relieve the Comptroller of having to decide multiple applications. We do not regard the burden of denying an application for the reasons previously given to be oppressive, but if it should become so, and repeat applications cannot be enjoined, the Legislature may wish to consider an appropriate remedy. Prohibiting successive applications, like requiring unnecessary applications to cure, unnecessarily impedes a claimant seeking compensation.

"We . . . presume that the Legislature intended a just and reasonable result by enacting [a] statute."[34] We will not read a statute to draw arbitrary distinctions resulting in unreasonable consequences when there is a linguistically reasonable alternative, as there is with Section 103.154(a). Accordingly, we conclude that the Comptroller correctly denied Blair's claim for compensation. Blair's petition for mandamus is denied.

_____
Nathan L. Hecht
Justice

Opinion delivered: August 23, 2013

---

[34] *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing TEX. GOV'T CODE § 311.021(3)) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . .")).