**TWIN CREEKS GOLF GROUP, L.P., Appellant**

v.

**SUNSET RIDGE OWNERS ASSOCIATION, INC., Appellee**

**NO. 03-16-00653-CV**

Court of Appeals of Texas, Austin.

Filed: August 25, 2017

Mr. J. Allen Halbrook, Mr. Robert J. Kleeman, Sneed, Vine & Perry, P.C., 900 Congress Avenue, Suite 300, Austin, TX 78701, for Appellant.

Mr. Noel L. Stout, Almanza, Blackburn, Dickie & Mitchell, 2301 S. Capital of Texas Highway Bldg. H, Austin, TX 78746, for Appellee.

Before Justices Puryear, Pemberton, and Goodwin

## OPINION

Melissa Goodwin, Justice

In this case of first impression, we must construe section 82.0675 of the Uniform Condominium Act. *See* Tex. Prop. Code § 82.0675. Section 82.0675 dictates that a provision of a declaration or recorded contract that requires condominium owners to maintain a membership in a private club is not valid after the tenth anniversary of the date the provision is recorded or renewed unless it is renewed after the ninth anniversary of that date in the manner provided by the declaration or recorded contract. *Id.* § 82.0675(a). Sunset Ridge Owners Association, Inc. (Sunset Ridge), sued Twin Creeks Golf Group, L.P., (Twin Creeks) seeking a declaration that an amended restrictive covenant filed by Twin Creeks that required club membership was invalid as to Sunset Ridge condominium owners under section 82.0675(a) due to Twin Creeks' failure to renew the covenant after the ninth anniversary. *See id.*; Tex. Civ. Prac. & Rem. Code § 37.004. Sunset Ridge filed a motion for summary judgment, and Twin Creeks appeals from the trial court's order granting summary judgment in fa-

vor of Sunset Ridge. For the reasons that follow, we affirm the trial court's summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Twin Creeks Country Club Community (the Community), which includes single family residences, condominiums, and a country club, was established pursuant to a master declaration filed on March 28, 2002, by Twin Creeks Holdings, Ltd. That same day, Twin Creeks Holdings filed a Restrictive Covenant, which included a provision requiring all residential owners to acquire and maintain a "Community Membership" in the country club, which was operated by Twin Creeks Country Club, Inc. Twin Creeks Holdings subsequently assigned all of its rights and obligations under the Restrictive Covenant to Twin Creeks Property, Ltd.

In 2004, a declaration of condominium was filed of record establishing Sunset Ridge Condominiums subject to the Restrictive Covenant. Also in 2004, Twin Creeks Property transferred operation of the country club from Twin Creeks Country Club to Twin Creeks Operating Co., L.P. As part of transferring operations, Twin Creeks Property filed an Amended and Restated Restrictive Covenant (the Amended Restrictive Covenant or the Amendment). The Amendment stated that Twin Creeks Property "desire[d] to confirm that [the] transition w[ould] have no effect on the obligation of any Owner of a Residential Unit to acquire and maintain a Community Membership in the Club."[1] The Amendment also stated that Twin Creeks Property "desire[d] to amend and restate the Original Covenant in its entirety, such that, after the Effective Date of

this Restrictive Covenant, the Original Covenant will be superseded and of no further force or effect." Other than changing the recitals setting out the background and replacing references to Twin Creeks Holdings with references to Twin Creek Property, the Amendment did not substantively change the terms of the original Restrictive Covenant. In 2008, appellant Twin Creeks was assigned all rights and obligations under the Amended Restrictive Covenant.

In 2015, Sunset Ridge filed suit against Twin Creeks Property and Twin Creeks Operating Co. seeking a declaration that the Amended Restrictive Covenant is invalid as to the condominium owners due to the failure to renew the covenant after the ninth anniversary pursuant to section 82.0675(a). Appellant Twin Creeks intervened as the current holder of the rights under the Amended Restrictive Covenant. Sunset Ridge amended its petition, adding Twin Creeks as a defendant and adding a cause of action for "monopoly." Sunset Ridge then moved for partial summary judgment, seeking summary judgment on its declaratory judgment cause of action but not on its monopoly claim. Following a hearing on Sunset Ridge's motion for partial summary judgment, but before the trial court signed an order, Sunset Ridge nonsuited Twin Creeks Property and Twin Creeks Operating Co. The trial court then signed an order granting partial summary judgment as to Sunset Ridge's declaratory judgment claim only and holding that section 82.0675 applies to the Amended Restrictive Covenant, that the Restrictive Covenant was not renewed after the ninth anniversary of the date it was filed, and that any provision of the Restrictive Covenant requiring condominium owners to

---

**1.** "Residential Unit" is defined in the Amended Restrictive Covenant as "any residential dwelling unit, residential lot, residential con-

dominium, townhouse, or other residential unit located within the [Twin Creeks Country Club community]."

maintain club membership was invalid. After the order was signed, Sunset Ridge filed an amended petition omitting its monopoly claim. In response, Twin Creeks filed an amended answer and a plea in abatement asserting that not all necessary parties had been joined.

After the parties were unable to agree on whether the partial summary judgment order was final and appealable, Twin Creeks filed a notice of appeal. *See Twin Creeks Golf Group, L.P. v. Sunset Ridge Owners Ass'n, Inc.*, No. 03-15-00763-CV, 2016 WL 368636, at *1, 2016 Tex. App. LEXIS 703, at *2 (Tex. App.—Austin Jan. 26, 2016, no pet.) (mem. op.). Twin Creeks then filed a motion to dismiss the appeal for lack of jurisdiction based on the lack of a final and appealable order. *See id.* at *1, 2016 Tex. App. LEXIS 703, at *1. This Court agreed that the order was not final and appealable and dismissed the appeal for lack of jurisdiction. *See id.* at *1, *1–2, 2016 Tex. App. LEXIS 703, at *1, *4–6. On remand, the trial court denied Twin Creeks' plea in abatement and signed an order dismissing Sunset Ridge's monopoly claim against Twin Creeks and all of its causes of action against Twin Creeks Property and Twin Creeks Operating Co., rendering the order granting partial summary judgment unquestionably final and appealable. Twin Creeks now appeals the trial court's summary judgment in favor of Sunset Ridge and its denial of Twin Creeks' plea in abatement.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review declaratory judgments under the same standard as other judgments or decrees. Tex. Civ. Prac. & Rem. Code § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Hawkins*, 214 S.W.3d at 719. We review the court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-moving party, and we indulge every reasonable inference and resolve any doubts in the non-moving party's favor. *Id.* To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the movant satisfies this initial summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014).

Our resolution of Twin Creeks' issues involves statutory construction, which is a question of law that we also review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or unless the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). Construction of a restrictive covenant is likewise a question of law that we review de novo. *Elgohary v. Lakes on Eldridge N. Cmty. Ass'n*, No. 01-14-00216-CV, 2016 WL 4374918, at

*7-8, 2016 Tex. App. LEXIS 8876, at *21-22 (Tex. App.—Houston [1st Dist.] Aug. 16, 2016, no pet.) (mem. op.); *Trethewey v. Collins*, No. 03-07-00311-CV, 2009 WL 790284, at *3, 2009 Tex. App. LEXIS 2059, at *8 (Tex. App.—Austin Mar. 27, 2009, no pet.) (mem. op.). "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Restrictive covenants are to be construed liberally to effectuate the parties' intent as expressed in the instrument. Tex. Prop. Code § 202.003 (providing that restrictive covenant shall be liberally construed to give effect to its purposes and intent); *Owens v. Owens*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied) ("Our primary concern is to ascertain and give effect to the true intention of the parties as expressed in the instrument."). "[I]t is the objective, not the subjective intent of the parties which must be ascertained; it is the intent expressed or apparent in the writing which controls." *Travis Heights Imp. Ass'n v. Small*, 662 S.W.2d 406, 409 (Tex. App.—Austin 1983, no writ).

We review a trial court's denial of a plea in abatement for an abuse of discretion. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *Jimenez v. Federal Nat'l Mortg. Ass'n*, No. 02-15-00229-CV, 2016 WL 3661884, at *1, 2016 Tex. App. LEXIS 7192, at *3 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.). We likewise review a trial court's ruling concerning joinder of parties for an abuse of discretion. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910–11 (Tex. 2017). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding principles or rules. *See Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012).

The legislature enacted section 82.0675 of the Property Code in 2003. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 1101, § 2, sec. 82.0675, 2003 Tex. Gen. Laws 3163, 3163. (H.B. 2200). Section 82.0675 provides, in relevant part:

A provision of a declaration or recorded contract that requires owners of units in a condominium to maintain a membership in a specified private club is not valid after the 10th anniversary of the date the provision is recorded or renewed unless renewed after the ninth anniversary of that date in the manner provided by the declaration or recorded contract for amending the declaration or recorded contract and the text of the renewed provision is filed in the real property records of each county in which the condominium is located.

Tex. Prop. Code § 82.0675(a). In addition, section 3 of HB 2200 provided:

The change in law made by this Act applies only to a declaration, master deed, master lease, contract, or bylaw relating to club membership that is recorded, enacted, or renewed on or after the effective date [Sept. 1, 2003] of this Act. A provision of a declaration, master deed, master lease, contract, or bylaw relating to club membership that was recorded, enacted, or renewed before the effective date of this Act is continued in effect unless cancelled after the ninth anniversary of the date the provision was recorded, enacted, or renewed at a meeting of the apartment owners at which the provision is disapproved by the holders of at least 67 percent of the ownership interests in the condominium.

*See* Act of May 27, 2003, 2003 Tex. Gen. Laws at 3163.

## DISCUSSION

### Summary Judgment

In its first two issues, Twin Creeks argues that section 82.0675 does

not apply to the Amended Restrictive Covenant. We begin with Twin Creeks' second issue in which it initially argues that by its own terms, and as indicated by its location in the Uniform Condominium Act, section 82.0675 has effect only as to condominiums and not to other types of real property, such as the single family residences that are also subject to the Amended Restrictive Covenant here. Twin Creeks contends that the text of H.B. 2200 shows that the legislature did not intend section 82.0675 to apply to restrictions that are applicable to both condominiums and other types of real property. Twin Creeks further contends that the single family residence owners have a property interest in the mutual and reciprocal obligation among all property owners in the Community to pay club dues and that application of section 82.0675 to the Amended Restrictive Covenant would lead to an unjust and unreasonable result because the single family residence owners would have to pay increased dues while the condominium owners would continue to reap many of the benefits of the Community without paying club dues.

■ We agree that by its express language, section 82.0675 has effect on condominium owners. *See id.* § 82.0675; *Pochucha*, 290 S.W.3d at 867. However, it contains no exception for membership requirements applicable to condominium owners that also apply to owners of other types of real property. If the legislature had intended to exempt club membership requirements applying to both condominiums and other types of real property from section 82.0675, it could have done so expressly. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (stating that " '[h]ad the Legislature intended to limit the [Citizens Participation] Act to publicly communicated speech, it could have easily added language to that effect' . . . [but] because the

statute lacked such limiting language, 'we must presume that the Legislature broadly included both public and private communication' ") (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)); *Miller v. Keyser*, 90 S.W.3d 712, 719 (Tex. 2002) (stating that if legislature had wanted to restrict class of persons who could be sued under DTPA, it could have done so by simply drafting restriction into some provision of act). The Texas Supreme Court instructs us that " '[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written.' " *See Coleman*, 512 S.W.3d at 900 (quoting *Lippincott*, 462 S.W.3d at 508). We decline to read into section 82.0675 an exception such as that urged by Twin Creeks.

Further, the non-condominium owners' rights are not affected by the trial court's declaration that the club membership requirement is invalid *as applied to the condominium owners*, such that it renders the application of section 82.0675 to the condominium owners unjust or unreasonable. In arguing that the single family residence owners have a property interest in the mutual and reciprocal obligation of all Community property owners—not just the condominium owners—to pay club dues, Twin Creeks relies on *Inwood North Homeowners' Association, Inc. v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987) (stating that "[t]he concept of community association and mandatory membership is an inherent property interest" created by "[t]he mutual and reciprocal obligation undertaken by all purchasers in Inwood Homes"). *Inwood* involved a dispute between a homeowners' association and homeowners who were delinquent in their dues, and the issue was whether the homestead laws of Texas protected the homeowners against foreclosure for their failure to pay the

assessments. *Id.* at 633. The Texas Supreme Court noted that the purchase of a lot carried with it, as part of the property interest, the obligation to pay association fees and concluded that the homeowners' association was entitled to foreclose on the contractual lien it held on the houses of the delinquent owners. *Id.* at 636–37. Thus, *Inwood* involved the voluntary and deliberate decisions by some homeowners not to pay association fees. *See id.* at 634 (stating that some homeowners became "lax in the payment of their assessment charges").

Here, the issue is the application of a statutory provision that, under certain circumstances, invalidates the requirement that condominium owners pay club membership dues, *see* Tex. Prop. Code § 82.0675(a), and Sunset Ridge did not seek a declaration as to the rights and interests of the non-condominium owners. Consequently, the non-condominium homeowners' property interests arising from the mutual restrictive covenants recognized in *Inwood, see* 736 S.W.2d at 636, are not implicated here, and Twin Creeks' reliance on *Inwood* is misplaced. Further, section 82.0675(a) provides for the continuation of a membership requirement through renewal after the ninth anniversary in the manner provided in the declaration or recorded contract. Tex. Prop. Code § 82.0675(a). The Amendment was filed on June 21, 2004, and Twin Creeks could have foreclosed the result it now seeks to avoid by renewing the membership provision after June 21, 2013. Consequently, on these facts, we cannot conclude that application of the plain language of section 82.0675 to the Amendment as it relates to the condominium owners leads to an unreasonable result. *See Marks,* 319 S.W.3d at 663. Moreover, even if we were to conclude that the application of section 82.0675 to the Amendment led to unreasonable results here, "reasonableness is not the standard

for eschewing plain statutory language." *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 570 (Tex. 2014) (citing *In re Blair,* 408 S.W.3d 843, 859 (Tex. 2013) (Boyd, J., concurring)). Rather, the standard is absurdity, and as discussed below in our analysis of Twin Creeks' first issue, we cannot conclude that our construction of section 82.0675 on the facts of this case meets that "high standard." *See id.*

Twin Creeks also argues that the Amendment is not a "declaration" within the meaning of section 82.0675(a). It cites the Property Code definition of "declaration"—"an instrument, however denominated, that creates a condominium, and any amendment to that instrument"—and argues that neither the original Restrictive Covenant nor the Amendment created a condominium or amended a document that did. *See* Tex. Prop. Code § 82.003(a)(11) (defining "declaration"). Twin Creeks likewise argues that the Amendment is not a "recorded contract" within the meaning of section 82.0675(a). It notes that the term "recorded contract" is not defined in the Property Code and argues that the legislature's use of the term "contract" in section 3 of H.B. 2200 indicates that the legislature meant something "narrower than the universe of documents that are contractual in nature" or it would not have been necessary to include the additional terms "master deed," "master lease," and "bylaw." *See* Act of May 27, 2003, 2003 Tex. Gen. Laws at 3163. In support of that argument, Twin Creeks cites other sections of the Uniform Condominium Act that use the term "contract" and argues that in none of those provisions is it used to include a restrictive covenant and that it is reasonable to conclude that the legislature's use of the term "recorded contract" was intended to be consistent with the use of the term "contract" elsewhere in the Uniform Condominium Act as not encompassing restric-

tive covenants. *See* Tex. Prop. Code §§ 82.068(c), .102(a)(5), .105, .108(b), .119(f)(3), .152(c), .153(a)(5), .156(a), (b), (c), .157(a), .158. Finally, Twin Creeks argues that the legislature's omission of the term "dedicatory instrument"—defined to include "restrictive covenants"—demonstrates that it did not intend section 82.0675 to apply to restrictive covenants. *See id.* § 82.003(a)(11-a) (defining "dedicatory instrument").

We conclude that the Amended Restrictive Covenant is a "recorded contract" within the meaning of the term as used in section 82.0675(a). Texas courts have held that restrictive covenants are contractual agreements. *See Pilarcik*, 966 S.W.2d at 478 (stating that restrictive covenants are subject to general rules of contract construction); *Trant v. Brazos Valley Solid Waste Mgmt. Agency*, 478 S.W.3d 53, 59 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (same); *Baywood Estates Prop. Owners Ass'n, v. Caolo*, 392 S.W.3d 776, 782 (Tex. App.—Tyler 2012, no pet.) (stating that restrictive covenant is contractual agreement between seller and purchaser of real property); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.) (same). And it is undisputed that the Amended Restrictive Covenant was filed in the real property records and thus was "recorded." We do not find persuasive Twin Creeks' argument that the legislature's use of the term "contract" elsewhere in the Property Code to refer to contracts other than restrictive covenants indicates that it intended some "narrower" meaning of the word "contract" in section 82.0675(a). Regardless of whether the word "contract" can be used to refer to various other types of agreements, restrictive covenants are contractual agreements. For the same reason, we do not view the legislature's omission of the term "restric-

tive covenant" from section 82.0675(a)—while including it in the definition of "dedicatory instrument"—to be determinative. *See* Tex. Prop. Code § 82.003(a)(11-a). Based on the plain language of section 82.0675(a) and informed by the Texas Supreme Court's treatment of restrictive covenants, we conclude that the Amended Restrictive Covenant is a "recorded contract" under section 82.0675(a). *See id.* § 82.0675(a); *Marks*, 319 S.W.3d at 663; *Pilarcik*, 966 S.W.2d at 478. We overrule Twin Creeks' second issue.

In its first issue, Twin Creeks argues that the Amendment did not cause section 82.0675 to become applicable because the Restrictive Covenant was in effect prior to the effective date of H.B. 2200, its language remained virtually unchanged by the Amendment, and the Amendment did not create a new restrictive covenant but instead corrected, improved, or reformed and continued an existing one. There is no dispute that section 82.0675 does not apply to the original Restrictive Covenant because it was in effect prior to the effective date of H.B. 2200. Twin Creeks contends that the legislature's omission of the word "amendment" from section 82.0675(a) and section 3 of H.B. 2200 indicates that it did not intend for an amendment of an existing restrictive covenant to make section 82.0675 applicable. The gravamen of Twin Creeks' argument is that because the Restrictive Covenant was amended and restated but substantially unchanged, the Amendment is, in substance, the same covenant and is therefore grandfathered from section 82.0675.

Sunset Ridge points to language in the Amendment that it would "amend and restate the Original Covenant in its entirety, such that, after the Effective Date of this Restrictive Covenant, the Original Covenant will be superseded and of no further

force or effect." Since the Amendment superseded and replaced the original Restrictive Covenant, Sunset Ridge argues, section 82.0675 applies to the Amendment. In the alternative, Sunset Ridge argues that even if the Amendment merely corrected, improved, or reformed the original Restrictive Covenant, the Amendment constitutes a renewal within the meaning of section 82.0675(a).

Twin Creeks responds that this Court has held that similar language in an amendment did not rescind but only modified the prior covenant. *See Trethewey*, 2009 WL 790284, at *3–4, 2009 Tex. App. LEXIS 2059, at *10. In *Trethewey*, the landowners recorded Second Amended Restrictions that stated that the prior restrictions "shall have no force and effect and are hereby rescinded." *Id.* at *2, 2009 Tex. App. LEXIS 2059, at *5. The restrictive covenant at issue was unchanged in the amended restrictions. *Id.* at *3, 2009 Tex. App. LEXIS 2059, at *9. The plaintiff property owners argued that because the restrictions were rescinded, they could not be modified or amended, making the modifications and amendments void and unenforceable. *Id.* at *2–3, 2009 Tex. App. LEXIS 2059, at *7. This Court, reasoning that the language of the amendment indicated an intent to modify existing restrictions, that the amended restrictions were virtually identical to the original, and that the recision and replacement occurred in a single act of adopting the amendment, held that the intent of the landowners was to amend or modify the original restrictive covenants and that they were valid and enforceable. *Id.* at *3–4, *4–5, 2009 Tex. App. LEXIS 2059, at *10, *13. In addition to relying on *Trethewey*, Twin Creeks further responds that in other sections of the Property Code, "renewed" and other forms of "renew" are used to refer to lengthening the term of a restrictive covenant, *see* Tex. Prop. Code §§ 82.056(a)(6), (b), .111(a)(1),

(h), 201.004, .006(b)(1), (3), 204.203(d), that the Amendment did not lengthen the term of the original Restrictive Covenant, and that it was therefore not "renewed" within the meaning of section 82.0675(a) so as to make section 82.0675(a) applicable.

We do not find *Trethewey* controlling on the issue before us. In both *Trethewey* and this case, the intent of the amendments was to modify—without substantially changing—prior restrictions, the prior restrictions were rescinded or superseded, and the amendments replaced the original restrictions. However, in *Trethewey*, the question was whether the amended restrictions were valid and enforceable based on the terms of the amendment, *see* 2009 WL 790284, at *2–3, 2009 Tex. App. LEXIS 2059, at *7, and there was no question of a statutory limitation on the restrictions. Here, the parties agree that the Amended Restricted Covenant is valid and enforceable. The issue is not whether Twin Creeks intended to continue the provision requiring club membership in the Amendment but whether the Amendment was "recorded, enacted, or renewed on or after the effective date of" section 82.0675 so that it falls within the purview of section 82.0675. *See* Act of May 27, 2003, 2003 Tex. Gen. Laws at 3163. It is undisputed that the Amended Restrictive Covenant, which superseded and replaced the original Restrictive Covenant, was "recorded ... after the effective date of section 82.0675." Thus, by its plain language, section 82.0675 applies to the Amendment.

In addition, we disagree with Twin Creeks' narrow definition of "renewed" and other forms of "renew." Initially, we observe that the forms of "renew" in the Property Code sections cited by Twin Creeks are not all used to mean "lengthen the term of." *See, e.g.,* Tex. Prop. Code § 201.004 (referring to "extend *or* renew") (emphasis added). Further, as with the use

of the word "contract" in other sections of the Property Code in a way that excludes restrictive covenants, the use of the terms "renew," "renewed," or "renewal" to mean the lengthening of the term of an agreement in some sections of the code does not preclude its use to mean otherwise in section 82.0675(a). Because the Uniform Condominium Act does not define "renewed," we look to its ordinary meaning. *See In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) ("Words and phrases that are not defined by statute and that have not acquired a special or technical meaning are typically given their plain or common meaning."). In addition to meaning "lengthening," "renewal" is also defined as "[t]he act of restoring or reestablishing" and "the replacement of an old contract with a new contract, as opposed to the mere extension of a previous . . . contract." *Black's Law Dictionary* 1488 (10th ed. 2014). Here, by its own language, the Amendment reestablished and replaced the original Restrictive Covenant, which was therefore "renewed" within the plain meaning of section 82.0675(a). *See* Tex. Prop. Code § 82.0675(a); *Marks*, 319 S.W.3d at 663; *Lipsky*, 460 S.W.3d at 590; *Pilarcik*, 966 S.W.2d at 478.

Finally, Twin Creeks argues that applying section 82.0675 to the Amendment leads to an absurd result. Twin Creeks cites the example of a covenant's having to be amended to correct a typographical error and argues that it would be unreasonable to conclude that such an amendment should be subject to section 82.0675. We cannot agree. By the express language of section 82.0675(a), required club memberships will not continue beyond ten years absent additional action. *See* Tex. Prop. Code § 82.0675(a) (providing that requirement is *not valid* after tenth anniversary *unless renewed* as provided in declaration or recorded contract). Assuming that a restrictive covenant that is amended to

correct a typographical error becomes subject to section 82.0675, the membership requirement can nonetheless be retained as to condominiums if it is renewed in the manner provided by the declaration or recorded contract, something Twin Creeks did not do. *See id.* "[T]he 'absurdity doctrine' . . . is reserved for truly exceptional cases. . . ." *See Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (noting that "the bar for reworking the words our Legislature passed into law is high, and should be"). This is not such a case. Section 82.0675 deals with the rights of condominium owners, and the Legislature could have made the policy judgment not to exclude provisions that also apply to the rights of owners of other types of property. Therefore, we cannot conclude that applying section 82.0675 to the Amendment by giving effect to the language the Legislature chose leads to an absurd result. We overrule Twin Creeks' first issue. Having concluded that section 82.0675 applies to the Amendment, and because it is undisputed that Twin Creeks did not renew the Amended Restrictive Covenant after the ninth anniversary of the date it was recorded as required by section 82.0675(a), we further conclude that the trial court did not err in granting Sunset Ridge's motion for partial summary judgment.

**Plea in Abatement**

In its third issue, Twin Creeks argues that the trial court erred by denying its plea in abatement. Twin Creeks contends that the non-condominium homeowners have property interests arising from the mutual restrictive covenants recognized in *Inwood, see* 736 S.W.2d at 636, and that because the relief Sunset Ridge sought and obtained prejudiced those interests, they were necessary parties, *see* Tex. Civ. Prac. & Rem. Code § 37.006(a) (providing that when declaratory judgment

is sought, "all persons who have or claim any interest that would be affected by the declaration must be made parties"). Twin Creeks relies on *April Sound Management Corp. v. Concerned Property Owners for April Sound, Inc.*, 153 S.W.3d 519 (Tex. App.—Amarillo 2004, no pet.). *April Sound* involved an effort to discontinue a recreational charge imposed on each lot in a masterplanned community, and the court held that the declaratory relief sought would change the rights and interests of each property owner so that all property owners were necessary parties. *Id.* at 521–23, 526. Twin Creeks argues that, as in *April Sound*, the declaratory relief sought and obtained by Sunset Ridge affected the property interests of the non-condominium homeowners, making them necessary parties.

Sunset Ridge responds that Twin Creeks has waived its right to add additional parties to the suit. A party waives its right to seek abatement by failing to assert it "until after the hearing on the merits of the case." *Shiffers v. Estate of Ward*, 762 S.W.2d 753, 755 (Tex. App.—Fort Worth 1988, writ denied); *accord Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *6, 2016 Tex. App. LEXIS 3715, at *18 (Tex. App.—Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.) (holding that nonjurisdictional plea in abatement is waived if not urged before trial on merits); *Tex-On Motor Ctr. v. TranSouth Fin. Corp.*, No. 14-04-00366-CV, 2006 WL 664161, at *1, 2006 Tex. App. LEXIS 2035, at *3 (Tex. App.—Houston [14th Dist.] Mar. 16, 2006, no pet.) (mem. op.) (same); *see also Farnsworth v. Massey*, 365 S.W.2d 1, 4 (Tex. 1963) (holding that failure to file plea in abatement before trial constituted waiver of plea). Twin Creeks responds that at the time of the hearing on Sunset Ridge's motion for partial summary judgment, Sunset Ridge still maintained its cause of action for monopoly against Twin Creeks and that after the hearing, Sunset Ridge amended its petition renaming the other two Twin Creek entities as defendants. Thus, Twin Creeks maintains that there had been no trial on the merits when it filed its plea in abatement and it did not waive its right to assert additional necessary parties.

In the alternative, Sunset Ridge argues that even if Twin Creeks did not waive its right to assert a plea in abatement, no additional parties must be joined under section 37.006(a) and the joinder analysis of Rule 39. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a); Tex. R. Civ. P. 39 (entitled Joinder of Persons Needed for Just Adjudication). Sunset Ridge argues that Twin Creeks' reliance on *Inwood* and *April Sound* is misplaced and contends that *Epernay Community Association, Inc. v. Shaar* is more on point with the facts of this case. *See* 349 S.W.3d 738 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In *Epernay*, homeowners in Subdivision Two were required to pay Subdivision One an annual fee for maintenance of the recreational areas. *Id.* at 741. Two homeowners in Subdivision Two filed suit seeking declaratory judgment that Subdivision One had no legal authority to assess fees against them or their property. *Id.* at 741, 746. The court concluded that the declarations the homeowners sought were limited to them and their property and that the other homeowners in Subdivision Two were not necessary parties. *Id.* at 747. Sunset Ridge argues that, as in *Epernay*, it sought a declaration of rights of only specific property owners—the condominium owners—and the trial court did not err in denying the plea in abatement.

Assuming without deciding that Twin Creeks has not waived its right to assert its plea in abatement, we conclude that the non-condominium homeowners were not

necessary parties. Section 37.006(a) provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006(a). Section 37.006(a) also provides that "[a] declaration does not prejudice the rights of a person not a party to the proceeding." *Id.* The Texas Supreme Court has held that the determination of whether parties must be joined under section 37.006(a) should be made using the analysis under Texas Rule of Civil Procedure 39.[2] *See* Tex. R. Civ. P. 39; *Crawford*, 509 S.W.3d at 911 n.3 (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004)); *Epermay*, 349 S.W.3d at 746. Rule 39 provides that a person shall be joined as a party in an action if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Tex. R. Civ. P. 39(a).

In this case, where the issue is the application to the condominium owners of the requirement to pay club membership fees to Twin Creeks, and where Sunset Ridge represents all of the condominium owners, nothing precluded the trial court from rendering complete relief between the existing parties. *See* Tex. R. Civ. P. 39(a)(1); *Craw-*

*ford*, 509 S.W.3d at 911 (stating that complete relief could be afforded among those already parties because they were only parties to lease underlying dispute over royalty obligations); *Brooks*, 141 S.W.3d at 162 (concluding that although parties continued to litigate correctness, trial court's judgment was final and complete adjudication for parties before court). Moreover, the non-condominium homeowners are not necessary parties under Rule 39(a)(2) because they do not "claim[ ] an interest relating to the subject matter of the action." Tex. R. Civ. P. 39(a)(2); *see Crawford*, 509 S.W.3d at 912. Because Rule 39 does not define "claim," we look to its ordinary meaning. *In re Lipsky*, 460 S.W.3d at 590 (stating that we given undefined words their ordinary meanings); *Marks*, 319 S.W.3d at 663 (same). Applying this rule, the Texas Supreme Court in *Crawford* observed:

> The verb "claim" means "to demand recognition of (as a title, distinction, possession, or power) esp. as a right"; "to demand delivery or possession of by or as if by right"; "to assert or establish a right or privilege." *Claim, Webster's Third New Int'l Dictionary* (2002); *see also Claim, The American Heritage Dictionary of the English Language* (5th ed. 2016) (defining claim in pertinent part as "[t]o demand, ask for, or take as one's own or one's due"; "[t]o state to be true, especially when open to question; assert or maintain").

509 S.W.3d at 912. There is no evidence in the record that any of the non-condominium homeowners has ever asserted a claim

---

**2.** As the Texas Supreme Court noted in *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 n.3 (Tex. 2017), section 37.006 and Rule 39 use different language describing who constitutes necessary parties and outline different consequences for nonjoinder. *Id.* While section 37.006 clarifies that a declaration does

not prejudice the rights of a person not a party, Rule 39 mandates that a "necessary party" be made a party. *See id.* "Accordingly, Rule 39's requirements govern when a party is seeking to compel joinder of persons in a declaratory-judgment action." *Id.*

or interest in the subject of this suit—the application of section 82.0675 to the Amendment as it applies to the condominium owners. *See id.* (noting that in dispute over royalty payments, adjacent landowners were not necessary parties because not "a single one ... ha[d] ever demanded or asserted" royalty interest in minerals that were subject of suit).

While the non-condominium homeowners *could* claim an interest, only Twin Creeks has actually claimed that they have such an interest. *See id.* (noting that although adjacent landowners "*could* claim" interest in minerals, only lessee had actually claimed that they had interest). The record reflects that at the hearing on Sunset Ridge's motion for partial summary judgment, counsel for Twin Creeks stated that he "believe[d] the other homeowners [were] aware of the dispute" but "[didn't] know if they [were] aware of the lawsuit." While the non-condominium homeowners do not need to appear in the case and assert an interest to "claim an interest" within the meaning of Rule 39(a), they do need to do something to actually assert an interest. *See id.* at 913 (stating that adjacent landowners "did not need to actually 'c[o]me to court to assert an interest' in order to claim an interest under Rule 39. But they needed to do *something*, and the adjacent landowners have done nothing") (quoting, in reversing on other grounds, *Crawford v. XTO Energy, Inc.*, 455 S.W.3d 245, 248–49 (Tex. App.—Amarillo 2015)). Here, as in *Crawford*, the record indicates that the non-condominium homeowners have done nothing. *See id.* at 913.

Finally, we address Twin Creeks' concern that a judgment that the Amendment is invalid as to the condominium owners would subject Twin Creeks to the risk of an inconsistent judgment should the non-condominium homeowners obtain a subsequent judgment that the Amendment is valid as to the condominium owners and that Twin Creeks is required to collect club membership dues from them. *See* Tex. R. Civ. P. 39(a)(2)(ii). "While this concern is logical, it does not alter our conclusion." *See Crawford*, 509 S.W.3d at 913–14 (acknowledging that lessee "reasonably express[ed] concern that a judgment in [the plaintiff's] favor in the absence of the adjacent landowners would subject [the lessee] to the risk of incurring multiple or otherwise inconsistent obligations"). "Rule 39(a) requires joinder of a person who 'claims an interest relating to the subject of the action' and whose absence subjects a party to 'a substantial risk of incurring double, multiple, or otherwise inconsistent obligations *by reason of* [the absent person's] claimed interest." *Id.* (quoting Rule 39(a)). Any risk Twin Creeks faces of incurring inconsistent obligations arises not "by reason of" the non-condominium homeowners' "claimed interest"—because they have claimed no interest—but because Twin Creeks may increase their membership dues or reduce their services, as Twin Creeks asserts will occur if the trial court's ruling is upheld. *Id.* (concluding that lessee's risk of inconsistent obligations had arisen not "by reason of" adjacent landowners' "claimed interest," because they had not asserted interest, but had arisen because lessee had made unilateral decision to credit royalties attributable to plaintiff's tract to adjacent landowners). Twin Creeks' intention to increase membership dues for non-condominium homeowners does not make them necessary parties under Rule 39(a). *See id.* Applying the plain language of Rule 39(a), we conclude that the non-condominium homeowners are not necessary parties and overrule Twin Creeks' third issue. *See Crawford*, 509 S.W.3d at 912–14; *Marks*, 319 S.W.3d at 663. Accordingly, we hold that the trial court did not err in denying Twin Creeks' plea in abatement.

## CONCLUSION

Having overruled Twin Creeks' issues, we affirm the trial court's judgment.