# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00550-CV

**Precision Roofing, Inc., Appellant**

**v.**

**David Zavelson and Tracy Zavelson, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-16-000909, HONORABLE KARIN CRUMP, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this residential-construction case, a subcontractor and the property owners dispute the validity of the subcontractor's statutory lien. *See generally* Tex. Prop. Code §§ 53.001-.287 ("Mechanic's, Contractor's or Materialman's Liens"). The subcontractor, Precision Roofing, Inc. (Precision), filed suit to foreclose its lien on the property of David and Tracy Zavelson. The Zavelsons filed a summary motion to remove the lien. *See id.* § 53.160 (authorizing summary motion to remove invalid or unenforceable lien). Both parties filed cross-motions for summary judgment. The trial court granted the motion to remove the lien, granted the Zavelsons' motion for summary judgment, and denied Precision's. For the reasons that follow, we will modify the judgment to reduce the award of attorney's fees and costs and affirm as modified.

**FACTUAL AND LEGAL BACKGROUND**

We begin by setting out the governing statutory framework. A subcontractor such as Precision is considered a derivative claimant because, "unlike a general contractor, [it] has no constitutional, common law, or contractual lien on the property of the owner." *First Nat. Bank in Graham v. Sledge*, 653 S.W.2d 283, 285 (Tex. 1983). As a result, a derivative claimant's right to recover against the property owner depends entirely on the lien statutes. *Id.*; *Ready Cable, Inc. v. RJP S. Comfort Homes, Inc.*, 295 S.W.3d 763, 765 (Tex. App.—Austin 2009, no pet.). Chapter 53 entitles a person who supplies labor or furnishes materials to construct or repair a "house, building, or improvement" pursuant to a contract with the property owner, the owner's agent, or the original contractor to a lien on that property and on "each lot of land necessarily connected" under certain circumstances. *See* Tex. Prop. Code §§ 53.021-.023.

Subchapter C sets out the procedures necessary to perfect the lien. *See id.* § 53.051 ("To perfect the lien, a person must comply with this subchapter."); *see generally id.* §§ 53.051-.058 ("Procedure for Perfecting Lien"). As a general rule, a claimant must timely file an affidavit with specified contents in the real property records of the county where the property is located and send a copy of the affidavit to the owner. *See id.* §§ 53.052, .054, .055. Additional procedures apply to certain derivative claimants. *See generally id.* §§ 53.056-.058 (setting specialized notice requirements). Subchapter K contains additional procedures that are applicable if the claim arises from a "residential construction project." *See id.* § 53.251(b) ("A person must comply with this subchapter in addition to the other applicable provisions of this chapter to perfect a lien that arises

2

from a claim resulting from a residential construction project."); *see generally id.* §§ 53.251-.260 ("Residential Construction Projects").

A derivative claimant may also "seek recovery from 'trapped' funds held by the property owner or funds 'retained' by the owner." *Pham v. Harris Cty. Rentals, L.L.C.*, 455 S.W.3d 702, 707 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Subchapter E addresses "retained" funds, which are "withheld from the original contractor either under a contractual agreement or under section 53.101." *Id.*; *see generally* Tex. Prop. Code §§ 53.101-.107 ("Required Retainage for Benefit of Lien Claimants"). Section 53.101 requires an owner to retain ten percent of the contract price during work "under an original contract for which a mechanic's lien may be claimed" to "secure the payment of artisans and mechanics who perform labor or service." *See* Tex. Prop. Code §§ 53.101, .102. "A claimant has a lien on the retained funds" if it "sends the notices required by this chapter in the time and manner required," and timely "files an affidavit claiming a lien." *Id.* § 53.103. However, if the owner fails or refuses to retain funds:

> [T]he claimants complying with Subchapter C or this subchapter have a lien, at least to the extent of the amount that should have been retained from the original contract under which they are claiming, against the house, building, structure, fixture, or improvement and all of its properties and against the lot or lots of land necessarily connected.

*Id.* § 53.105(a).

We now turn to the partes' dispute. In October of 2014, David Zavelson—but not Tracy—signed a contract with Cox Development Corporation to remodel and expand their home (the

Property) in Travis County. Cox subcontracted "roofing and flashing services" to Precision. In December of 2014, David Zavelson terminated the contract with Cox.

Shortly after David terminated the contract, Precision filed two affidavits in the real property records of Travis County claiming a lien on both the Property and the retainage in the total amount of $15,374. Precision subsequently filed suit to foreclose on the lien. Because David's contract with Cox did not contain a retainage clause, Precision relied entirely on the statutory retainage provisions in Chapter 53. The Zavelsons argued in their answer to the lawsuit that the lien was invalid because the Property was their homestead and the prerequisites to attaching a lien to a homestead had not been met. Under Subchapter K, in addition to complying with the applicable notice and filing requirements, "[t]o fix a lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement." *Id.* § 53.254(a). And, "[i]f the owner is married, the contract must be signed by both spouses." *Id.* § 53.254(c). The Zavelsons asserted that this requirement was not met because Tracy did not sign the contract with Cox.

The parties subsequently stipulated that Tracy did not sign the contract, and that the lien would be unenforceable against the Property if the trial court determined that it was the Zavelsons' homestead. In addition, the parties stipulated that David did not retain any funds but that if he had, "the total statutory retainage amount . . . would have been at least $18,589.77." Almost a month later, Precision filed a "Partial Release Regarding Affidavits Claiming Lien" in the real

4

property records of Travis County releasing its lien against the Property but not the retainage.[1] *See id.* § 53.157(1) (providing that lien can be released by "recording a lien release signed by the claimant").

Precision then filed a motion for summary judgment arguing that the Zavelsons were liable for the $18,589.77 that Section 53.101 required David to retain. The Zavelsons filed a combined summary motion to remove the lien and a cross motion for summary judgment. Precision argued that the statutory duty to retain applied to David and that the Zavelsons were "personally liable" for that amount under Section 53.057(f). In response, the Zavelsons argued that Section 53.101 did not apply in this case because "no liens can exist against the retainage alone without an underlying lien against the Property." They also argued that even if the duty did apply, Chapter 53 provided only one remedy: a lien on the Property under Section 53.105. And the Zavelsons asserted that because Precision had already released its lien on the Property, they were entitled to summary judgment. Both parties also sought an award of attorney's fees. *See id.* § 53.156 (authorizing trial court to award attorney's fees "in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part").

The trial court issued an order that removed the lien on the Property, granted the Zavelsons' motion for summary judgment and denied Precision's, and awarded the Zavelsons $15,374 in attorney's fees and conditional appellate fees. This appeal followed.

---

[1] Precision excluded from the release "any other claims and liens that may exist in favor of [Precision] under any applicable law against [the Zalvesons] (but not the Property) and/or against any statutory Retainage that may have been withheld by [the Zavelsons.]."

## DISCUSSION

In four issues on appeal, Precision argues that the trial court erred in granting the Zavelsons' motion for summary judgment and denying Precision's, and that the trial court abused its discretion in awarding fees. In the alternative, Precision argues that insufficient evidence supports the amount awarded for attorney's fees. Precision also asserts that the portion of the judgment removing the lien on the Property is an advisory opinion because its release of the lien as to the Property mooted the issue of whether the lien attached.

### Liability of the Zavelsons

Precision first argues that it was entitled to summary judgment because the Zavelsons are "personally liable" to it under Section 53.057 for the amount that should have been retained.

### *Standard of Review*

We review a grant of summary judgment de novo.[2] *Texas Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex.

---

[2] The Zavelsons' summary motion to remove the lien "operates, in effect, as a motion for partial summary judgment," and we review it under the same standards. *See In re M&O Homebuilders, Inc.*, 516 S.W.3d 101, 107 & n.10 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding).

2018).  Because the trial court granted one motion and denied the other, we will determine all questions presented and render the judgment the trial court should have rendered.  *Id.*

Resolution of Precision's issues turn on statutory construction, which is a question of law that we review de novo.  *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).  Our goal when construing a statute is to determine and give effect to the legislature's intent.  *Id.*  "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results."  *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).  In this analysis, we examine the language of the specific provision at issue within the context of the whole statute.  *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017).  The Texas Supreme Court directs us to liberally construe lien statutes for the purpose of protecting claimants.  *First Nat. Bank in Dall. v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1974); *see Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 235 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

### *Analysis*

The parties dispute, as they did in the trial court, whether Section 53.101 required David to retain funds and, if so, whether Precision can recover the amount David was required to retain.  We will assume without deciding that the statutory duty to retain applied and turn to whether Precision can recover that amount under Section 53.057.  Precision argues that Sections 53.103 and .057 work together to allow a claimant to recover retained funds from the owners:  Section 53.103 creates a lien on the retainage and Section 53.057(f) makes the owners "personally liable" for the retainage.

7

Section 53.057(f) provides:

> (f) A claimant has a lien on, and the owner is personally liable to the claimant for, the retained funds under Subchapter E if the claimant:
>
>> (1) gives notice in accordance with this section and:
>>
>>> (A) complies with Subchapter E; or
>>>
>>> (B) files an affidavit claiming a lien . . . . and
>>
>> (2) gives the notice of the filed affidavit as required by Section 53.055.

Tex. Prop. Code § 53.057(f).  Precision focuses on the first sentence but ignores the other parts of Section 53.057.  Subsection (a) provides:

> A claimant may give notice under this section instead of or in addition to notice under Section 53.056 or 53.252[3] if the claimant is to labor, furnish labor or materials, or specially fabricate materials, or has labored, furnished labor or materials, or specially fabricated materials, under an agreement with an original contractor or a subcontractor providing for retainage.

*Id.* § 53.057(a).  Subsections (b)-(e) dictate the time, manner, and necessary contents of the notice.  *See id.* §§ 53.057(b)-(e).  The plain statutory language reflects that the legislature intended Section 53.057 to address contractual, rather than statutory, retainage claims.  *See Pham*, 455 S.W.3d at 707 (observing that the duty to retain can arise "either under a contractual agreement or under section 53.101").  By providing that a person "has a lien on, and the owner is personally liable to the

---

[3] *See generally* Tex. Prop. Code § 53.252 (setting out notice requirements for derivative claimants asserting a lien arising from a "residential construction project").

claimant for, the retained funds under Subchapter E," Section 53.057 details how a claimant can perfect a lien on contractual retainage.

The location of Section 53.057 in the statutory scheme confirms its role as a notice provision. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) (observing that when interpreting a particular provision, "we must consider its role in the broader statutory scheme"). Section 53.057 is part of Subchapter C, which lays out the default procedure for perfecting a lien under Chapter 53. After setting out the notice and filing requirements applicable to all claims, Section 53.056 imposes additional duties on subcontractors in general, and Section 53.058 applies to claimants who specially fabricated materials. *See* Tex. Prop. Code §§ 53.056, .058. Interpreting Section 53.057 as setting the notice requirements for contractual retainage claimants is consistent with that framework.

Thus, even if David was under a contractual duty to retain, we would still look to Subchapter E to determine the Zavelsons' liability. Precision argues that there must be a way for derivative claimants to hold the owners personally liable for the retainage, or the failure to retain, because Subchapter E (Sections 53.103 and .105) only creates a lien on the owner's property rather than making the owners "personally liable." However, "[a] lien is part and parcel of the underlying claim, the former existing only because of the latter." *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). A lien against certain property "is necessarily a claim against its owner." *Id.* By entitling the claimant to a lien on the retained funds, Section 53.103 makes the owners "personally liable" for those funds. *See id.*; *see also Exchange Sav. & Loan Ass'n v. Monocrete Pty. Ltd.*, 629 S.W.2d 34, 37 (Tex. 1982) (stating, under a previous version of Chapter 53, that "[t]he owner is personally liable for any funds paid to the original

9

contractor" in violation of the retainage provision). Similarly, Section 53.105 makes the owner who fails to retain funds subject to a lien against the property listed in section 53.105. *See* Tex. Prop. Code § 53.105.

Precision nevertheless argues that this Court approved a judgment against property owners in a similar case. *See W&W Floor Covering Co. v. Project Acceptance Co.*, 412 S.W.2d 379 (Tex. App.—Austin 1967, no writ.). That case also concerned a subcontractor's suit against property owners for work on their homestead. *Id.* at 382. The owners did not comply with the duty to retain. *Id.* This Court held that the claimant was entitled to a judgment against the owners. *Id.* However, we based our decision on a version of the lien statute with different language. At the time, article 5463 provided:

> If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article.

Act of June 17, 1961, 57th Leg., R.S., ch. 382, § 6, art. 5463(2), 1961 Tex. Gen. Laws 863, 868 (repealed 1983). When the legislature repealed this statute and enacted the Property Code, it included similar language in Subchapter D, which addresses "trapped" funds. *See generally* Tex. Prop. Code §§ 53.081-.085. Under Subchapter D, a subcontractor can send notice to the owner that it has not been paid a certain amount, which triggers the owner's duty to withhold from the original contractor "an amount necessary to pay the claim for which he receives notice." *Id.* § 53.081(a). If certain conditions are met, "the owner is liable and the owner's property is subject to a claim for any

10

money paid to the original contractor after the owner was authorized to withhold funds under this subchapter."[4] *Id.* § 53.084(b). If the legislature wanted to include similar language in Subchapter E, it could have done so expressly. *See Twin Creeks Golf Grp. v. Sunset Ridge Owners Ass'n*, 537 S.W.3d 535, 541 (Tex. App.—Austin 2017, no pet.) (declining to interpret Section 82.0675 of the Property Code to exempt condominium owners because if the legislature had intended to exempt them, "it could have done so expressly").

Precision maintains that a lien on the owner's property cannot be a derivative claimant's sole remedy for the failure to retain because it would undermine the statutory purpose of protecting subcontractors and other derivative claimants working on homesteads. Precision argues that such persons are usually not in a position to see that the "highly technical legalities" to fix a lien to a homestead are fulfilled. We acknowledge these concerns, but Precision's argument would require us to read new language into Section 53.105. The Texas Supreme Court instructs us that "[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam)).

We conclude that a claimant's remedy for an owner's failure to retain funds is a lien on the owner's property as provided in Section 53.105. Having released its lien on the Property, Precision was accordingly not entitled to summary judgment. We overrule Precision's first issue.

---

[4] Precision argues several times in its briefs to this Court that Section 53.084 also entitles it to a judgment against the Zavelsons. However, Precision does not argue that David was under a duty to "trap" funds or that it fulfilled the other requirements in Subchapter D. On this record, we cannot conclude that the Zavelsons are liable to Precision under Section 53.084.

11

**Advisory Opinion**

Precision's next argument is that the portion of the trial court's judgment that provides the lien against the Property is "hereby expunged and removed" constitutes an advisory opinion because Precision's release of its lien mooted the issue of whether the lien attached.

A case becomes moot when there is no longer a justiciable controversy between the parties or if the parties lack a cognizable interest in the outcome. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.* If a case becomes moot, the court loses jurisdiction because any decision rendered at that point would be an advisory opinion. *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016).

We cannot agree that Precision's lien release mooted any claim against the Property because Precision's claim against the Zavelsons rested on the same affidavits. Precision itself stated in the release that because:

> filing of the Affidavits were still required for perfection of and pursuit of [Precision's] liens afforded under Subchapter E of Chapter 53 of the Texas Property Code against the Retainage and Claimant's claims for personal judgment against Owners for failing to comply with the duty to withhold the Retainage as asserted in the Litigation, [Precision] cannot release the Affidavits entirely without prejudicing [Precision's] claims against [the Zavelsons] personally.

Despite the ostensible release of the lien and claim against the Property itself, Precision's claim was still present in the real property records for the Property. The validity of the lien claimed in those affidavits was the principal controversy between the parties, and expunging them from the property records was necessary to grant the Zavelsons complete relief. Because the validity of the lien

12

claimed in the affidavits filed in the county records for the Property remained a live controversy, the trial court did not render an invalid advisory opinion.

We overrule Precision's second issue.

**Attorney's Fees**

Precision challenges the trial court's award of fees in its final two issues. "In any proceeding to foreclose a lien . . . or in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorney's fees as are equitable and just." Tex. Prop. Code § 53.156. We review an fee award under Section 53.156 for an abuse of discretion. *Wesco Distribution, Inc. v. Westport Grp.*, 150 S.W.3d 553, 562 (Tex. App.—Austin 2004, no pet.). A trial court abuses its discretion by ruling without reference to guiding rules or principles. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017).

Precision asserts the trial court abused its discretion in denying its attorney's fees request because Precision was entitled to prevail on the merits and that insufficient evidence supports the $15,374 attorney's fees award to the Zavelsons. Because we have already concluded that the trial court correctly granted relief to the Zavelsons, we overrule Precision's third issue. Precision's final argument is that insufficient evidence supports the award because the Zavelsons only presented evidence of $11,288.65 in fees and costs. Subject to its other arguments on appeal, Precision does not dispute that an award of $11,288.65 would be reasonable and just and asks us to reduce the award to that amount. The Zavelsons agree that the evidence is insufficient and also request that we modify the judgment to reduce the award to $11,288.65. After reviewing the record, we agree that

the Zavelsons presented sufficient evidence to support an award of $11,288.65 but not the $15,374 awarded in the trial court's judgment. We sustain Precision's fourth issue.

## CONCLUSION

We modify the trial court's judgment to reduce the award of attorney's fees and costs to $11,288.65, and affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b).

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Field, and Bourland

Modified and, as Modified, Affirmed

Filed: November 9, 2018